# MARCH, 1913

SULLIVAN-SANFORD LUMBER COMPANY v. BEULAH WATSON.

No. 2278.    Decided March 26, 1913.

### 1.—Death—Railroad—Lumber Company.

A "logging road" owned and operated by a lumber company is a railroad within the terms of article 4694, Revised Statutes, 1911, and the company is liable as its owner under the statute for the death of one riding on its train caused by the negligence of its servants. Cunningham v. Neal, 101 Texas, 338, followed. (P. 9.)

### 2.—Same—Contract—Assuming Risk.

The contract between a lumber company, a private corporation operating a lumber road in connection with its business, and one permitted to ride upon its train upon a written pass, which stipulated that he assumed all risk of injury while so doing, was valid as against a claim for injury to such person in a collision of trains caused by negligence of the company's servants. The company not being a common carrier, the terms on which he was permitted to ride were matters in which the public had no interest, and could be fixed by private contract. Gulf, C. &. S. F. Ry. Co. v. McGown, 65 Texas, 640, distinguished. (Pp. 8-11.)

### 3.—Same.

No action for injuries resulting in death can be maintained where the injured person was precluded by a valid contract from recovering for his injuries if death had not resulted from them. Rev. Stats., 1911, art. 4695. (P. 10.)

### 4.—Same—Contract—Consideration.

The fact that a lumber company receiving upon its logging train for carriage upon a free pass one seeking employment from a contractor engaged in cutting logs for its mill, was incidentally interested in the purpose of his trip, did not deprive it of the right to contract with him that he assume the risk. (P. 11.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Morris County.

Mrs. Watson and others sued the Lumber Company, and had judgment which was affirmed on defendant's appeal (Texas Civ. App., 135 S. W., 653). The Lumber Company then obtained writ of error. Deceased applied to the Lumber Company for employment. Not obtaining it, he desired to visit the lumber camp of a contractor engaged in getting out logs for the mill, and for that purpose obtained from the company a pass to ride to the camp on its train, which embraced a stipula-

tion that the user assumed all risk of injury. Not obtaining employment there he obtained from the contractor, who was authorized to issue it, a similar pass for his return. His death was caused by a collision of trains during the return trip from the logging camp.

*Chas. S. Todd,* for plaintiff in error.—Under the law and the undisputed evidence the plaintiffs were not entitled to recover against appellant, Sullivan-Sanford Lumber Company, because the contract in evidence was a valid and lawful contract by which appellant was exonerated and released from liability, and the court erred in refusing to direct a verdict for defendant, Sullivan-Sanford Lumber Company, as requested, and in holding and charging the jury that said contract was void as contrary to public policy. Rev. Stats., arts. 3017, 3018; Thompson on Neg., sec. 1015; 1 Page, Cont., secs. 359, 364, 371; Hutch., Car., secs. 16, 40, 45, 57, 57a, 554; M., K. & T. Ry. Co. v. Carter, 95 Texas, 476-479; San Jacinto & S. Ry. Co. v. McLin, 26 Texas Civ. App., 423; B. & O. Ry. Co. v. Voight, 176 U. S., 498; Express Cases, 117 U. S., 1; Shoemaker v. Kingsbury, 12 Wal., 269; Insurance Co. v. Railway Co., 175 U. S., 91; Bates v. Old Colony Ry. Co., 147 Mass., 255; Hosmer v. Old Colony Ry. Co., 156 Mass., 506; Robertson v. Old Colony Ry. Co., 156 Mass., 526; Blank v. I. C. Ry. Co., 182 Ill., 332; P. P. C. & St. L. Ry. Co. v. Mahoney, 148 Ind., 196; L. & N. C. Ry. Co. v. Keefer, 146 Ind., 21; Coup v. Wabash Ry. Co., 56 Mich., 111; Mann v. White River, L. & B. Co., 46 Mich., 38; Russell v. P. P. C. & St. L. Ry. Co., 61 N. E., 678; Payne v. T. H. & I. Ry. Co., 157 Ind., 616; Griswold v. I. C. Ry. Co., 24 L. R. A., 647 (Iowa); Stephens v. S. P. Ry. Co., 29 L. R. A., 751 (Cal.); Hartford F. Ins. Co. v. Railway Co., 70 Fed., 64, 96 Fed., 687; Morris v. Brown, 111 N. Y., 318; Duff v. Railway Co., 91 Pa. St., 458; Hoar v. Railway Co., 70 Mo., 65; Wade v. Lutcher & Moore, 74 Fed., 517, 33 L. R. A., 255.

Defendant railroad was not public or common carrier, but a strictly private carrier, and Watson was not a passenger, but at most a bare licensee, voluntarily on said train at his own risk and instance, and the defendant did not owe him the duty of ordinary care, he not being an employee of the defendant. A., T. & S. F. Ry. Co. v. Mendoza, 60 S. W., 327; M., K. & T. Ry. Co. v. Cowles, 67 S. W., 1078; McGowen v. G., C. & S. F. Ry. Co., 73 S. W., 46.

The case comes under the rule counsel admit obtains when a person "is being carried as a matter of favor and without any compensation or advantage whatever to the carrier." 6 Cyc., 578; 3 Thomps. Neg., par. 2647.

The court erred in refusing to charge the jury, as requested by appellant, that plaintiffs could not recover unless the evidence is such that deceased Watson, if he had not been killed but only injured, might himself have recovered damages for such injury. Rev. Stats., art. 3018. It is well settled by the overwhelming weight of the best considered authority that a release given by the injured party bars any action for damages arising out of his death, whether brought by the personal rep-

resentative or for the benefit of the next of kin. L. & N. R. Co. v. McElwain, 34 L. R. A., note p. 790 et. seq.; Hill v. Pa. R. Co., 35 L. R. A., 196; Dibble v. N. Y. & E. Co., 25 Barb., 183; Littlewood v. N. Y. & E., 89 N. Y., 24; Hughes v. Auburn, 161 N. Y., 96; Re Taylor's Estate, 179 Pa. St., 254; Price v. R. & D. R. Co., 33 S. C., 556; Hecht v. O. & M. R. Co., 132 Ind., 507; Holton v. Daly, 106 Ill., 131.

*Glass, Estes, King & Burford* also filed brief on behalf of plaintiff in error.

*J. M. Terrell* and *Hart, Mahaffey & Thomas,* for defendants in error. The statute, in so far as it makes the owner of a railroad responsible for injuries causing death, resulting from the negligence of its agents and servants, has been held to apply to the owners of the character of railroad owned by appellant. Kirby Lumber Co., Receivers, v. Owens, 120 S. W., 936.

There are numerous decisions which by analogy not only evidence and establish a public policy forbidding the making of the character of contracts under consideration, but any contract whereby it is sought to secure immunity of the party seeking immunity by the contract. Fort Worth & D. C. Ry. Co. v. Rogers, 21 Texas Civ. App., 605; G., C. & S. F. Ry. Co. v. McGown, 65 Texas, 640; T. & P. v. Fenwick, 34 Texas Civ. App., 222.

Our courts further hold that any contract between a master and servant, whereby the former seeks to secure immunity from damages resulting from personal injuries, received by the servant on account of the negligence of the master, is void, in that it contravenes the public policy of the State. Bonner v. Bean, 80 Texas, 155; Railway v. Wood, 35 S. W., 880; Gulf, C. & S. F. Ry. Co. v. Darby, 67 S. W., 447; Pacific Express Co. v. Watson, 124 S. W., 127.

Contracts made between parents and employers of their minor children, whereby parents contract with such employers to waive or release the employer from any damages which they may sustain on account of injuries inflicted upon their minor children through the negligence of the employer are void as being contrary to the public policy of the State. Texas & Pacific Ry. v. Putnam, 63 S. W., 910; G. H. & S. A. Ry. v. Pigott, 116 S. W., 841.

A contract which in general terms exempts a carrier of passengers from all liabilities on account of any injuries received by a passenger while being transported, and which contains no specific exemption from liability for injuries received, on account of the negligence of the carrier or its servants does not have the effect to exempt the carrier from liability on account of injuries received by the passenger, on account of its negligence or that of its agents or servants. 5 Am. & Eng. Ency. of Law, 620; Blair v. Erie Ry. Co., 23 Am. Rep., 55; Mynard v. Syracuse Railway Co., 27 Am. Rep., 28.

One who licenses another by affirmative act to come on his premises or ride on his vehicle owes such person so licensed the duty to exercise

ordinary care to avoid injury to him. Railway Co. v. Harris, 4 Texas Civ. App., 641; Railway Co. v. White, 20 Texas, 202; Brown v. Sullivan, 71 Texas, 470; M., K. & T. Ry. Co. v. Miller, 8 Texas Civ. App., 245; Railway Co. v. Mother, 5 Texas Civ. App., 95; Railway Co. v. Morgan, 92 Texas, 98; Railway Co. v. Satterwhite, 19 Texas Civ. App., 17; Railway Co. v. Miller, 15 Texas Civ. App., 432; Railway Co. v. Holmes, 11 Texas Civ. App., 19; Railway Co. v. Miller, 8 Texas Civ. App., 245; Railway Co. v. Watkins, 88 Texas, 25; Railway Co. v. Williams, 21 Texas Civ. App., 470; Railway Co. v. Williams, 5 Texas Civ. App., 92; Railway Co. v. Mother, 5 Texas Civ. App., 95.

The contract contained in the pass is not valid as to these defendants in error, because it was not in the power of the deceased to make any contract or agreement prior to the time the injuries which caused his death were inflicted which would be valid as against the rights of his wife and minor children to recover damages for his death caused by the negligence of the plaintiff in error. Coleman v. Bank, 17 Texas Civ. App., 132; Hamilton v. Brooks, 51 Texas, 142; Richardson v. Hutchinson, 68 Texas, 81; 21 Cyc., 1397; Chicago, etc., Ry. Co. v. Martin, 53 Pac., 461; 6 Thompson on Neg., art. 7029; Illinois, etc., Ry. Co. v. Cosby, 69 Ill. App., 256.

The pass upon which Watson was riding at the time he was killed was not a mere gratuity issued and delivered for Watson's benefit alone, but was for the benefit of plaintiff in error also, and, therefore, was a carriage for hire. Grand T. Ry. Co. v. Stevens, 95 U. S., 655; 6 Cyc., 578.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The Honorable Court of Civil Appeals made an excellent and full statement of the case and findings of fact in this case, which we adopt:

"At the time of the institution of this suit, and prior thereto, the appellant, Sullivan-Sanford Lumber Company, was a private corporation engaged in the business of manufacturing and selling lumber at Naples, in Morris County, Texas. In addition to its mill and machinery, appellant also owned timber situated on lands some distance in the country, from which it obtained its supply of logs and material for carrying on its business. For the purpose of transporting logs from the forest to its mill at Naples it had constructed a railroad extending from the latter place about sixteen miles in length to its timber lands. This railroad was in all material respects similar to the usual standard gauge railroads constructed and used by the common carriers of the country. In operating this railroad two ordinary railway locomotives and cars, adapted to the business carried on, were used. No passengers were carried except the employees of appellant and those engaged in cutting timber, or someone seeking employment from the timber contractor. Nor was any freight carried except that belonging to the appellant, or to its timber contractor. It was customary for what is called the 'log train' to make daily trips, going out in the morning and

returning in the evening; and on this train those who were entitled to passage were transported. Persons other than employees who desired passage were given a permit, or pass, for which no charge was made. Such permits contained the following stipulation:

"'The user of this pass rides only on the following conditions:

"'1. This permit is accepted with the understanding that the person using it assumes all risk of injury of any character while using the same and hereby waives any claim for damages in case of injury.

"'2. The Sullivan-Sanford Lumber Company's railroad is not a common carrier and does not transport passengers for hire, but only carries its own officers and employees to and from their work for their own convenience and without charge.

"Signature————————'

"In July, 1909, J. A. Watson, who was not an employee, but was returning from a search for employment, was killed in a collision while riding on appellant's log train; and this suit was instituted by his surviving wife and children to recover damages resulting from his death.

"The facts show that on the morning of the day of his death Watson went to appellant's mill at Naples, seeking employment. He found none, but was referred to J. H. Findley, an independent contractor, who had established a logging camp upon appellant's lands and was engaged in cutting and supplying the mill with logs. Desiring to apply to Findley for work, Watson obtained from Lockridge, appellant's general manager, a permit, or pass, to go out that morning on the log train to Findley's camp. Upon reaching that place he was again unsuccessful in finding employment, and decided to return on the same train that evening. He was furnished by Findley, who, it seems, was authorized to do so, with another permit, or pass, entitling him to ride on that train to Naples. Both the pass issued by Findley and that given by Lockridge in the morning contained the usual stipulations heretofore referred to as embraced in permits to ride over that road. Besides Watson, the train upon that occasion carried as passengers Findley and some of his employees. It left the camp some later than usual, and was still further delayed en route by conditions not necessary to here notice. Although due at Naples at 6 o'clock p. m., it had not arrived three hours later. About 9 o'clock that night appellant's general manager, J. W. Lockridge, Martin Sullivan, and its acting secretary and treasurer, and some of the employees boarded a locomotive used about the mill for switching purposes, and started out in search of the delayed train. The night was dark and the railroad contained a number of curves. The engine pulling the train upon which Watson was riding was being run without any headlight, on account of the defective condition of the lamp provided for that purpose. The locomotive upon which Lockridge and his party were riding was moving backwards and upon the same track on which the train coming from the camp was running. The only light provided on it was a lantern held by one of the men sitting on the rear end of the tender. The locomotive pro-

ceeded at a rather slow rate of speed, whistled for a crossing just as it was passing out of the yards, but gave no other signals thereafter. When this party had reached a point estimated at from one-fourth to one-half of a mile from the mill the locomotive collided with the belated train. The engineer on that train was not expecting to meet any such obstruction, and was traveling at the rate of about fifteen or twenty miles per hour. The collision was so violent that it practically demolished one of them, derailed several of the cars, killed Watson and one of the employees, and injured others. The proximity of the two locomotives was not discovered by those operating them till so near together that a collision was unavoidable. There was evidence tending to show that the log train was not equipped with brakes sufficient to enable those in charge to make a quick stop; that the engineer had never been over the road before that day, and knew nothing about the condition of the track.

"Martin Sullivan was made a party defendant in the suit. The petition among other things charged negligence in the following particulars: In placing in charge of the log train an inexperienced engineer, failing to provide a headlight and brakes for that train, and in running on the same track the locomotive with which the train collided.

"The defendants answered separately; the appellant, Sullivan-Sanford Lumber Company, pleading, after demurrer and exceptions and general denial, (1) contributory negligence and unanticipated inevitable accident; (2) that as a private corporation it was not liable under the statute for the negligence of its servants and agents for injuries resulting in death, and (3) that the deceased, Watson, by contract, verbal and in writing, expressly assumed all risk of injury or death, and expressly waived any and all claim for damages. On a trial before a jury a verdict was rendered in favor of the defendant, Martin Sullivan, and against the Sullivan-Sanford Lumber Company for $8750."

It has been decided in this State that "a logging road," such as that of plaintiff in error, is a railroad, within the terms of section 1 of article 4694, Revised Statutes, 1911, which reads:

"1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer, of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents; when the death of any person is caused by the negligence or carelessness of the receiver or receivers or other person or persons in charge or control of any railroad, their servants or agents; and the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery, or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad were being operated by the railroad company."

The private corporation which owned and operated the logging road on which the death of John A. Watson occurred was "owner" of that road and liable under the statute above copied to the same extent as

any other corporation or person would be. Cunningham v. Neal, 101 Texas, 338, 107 S. W., 539, 15 L. R. A. (N. S.), 479.

After careful examination we are of opinion that the judgment must be affirmed unless the exemption from liability for injuries embraced in the pass on which Watson was riding is valid and defeats the right of recovery.

The wife and children can not recover if Watson could not have recovered if he had survived his injuries.

Article 4695, Revised Statutes, 1911, reads:

"The wrongful act, negligence, carelessness, unskillfulness, or default mentioned in the preceding article, must be of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

The terms of the pass pleaded here were denounced in G., C. & S. F. Ry. Co. v. McGown, 65 Texas, 640, as contrary to public policy, therefore void when issued by a public carrier. There are a number of cases decided by the Courts of Civil Appeals to the same effect as the case cited. The courts of the different States are much divided on the question, but we accept the opinion of Judge Stayton in the case cited as conclusively settling the question in this State, so far as the carriage of passengers upon public passenger trains may be involved. But the question remains, does it apply to cases like this, where no passengers, as such, were carried at any time? The opinion of Judge Stayton, in G., C. & S. F. Ry. Co. v. McGown, supra, is sustained by many cases and is perhaps adverse to the weight of authority, but it is a strong presentation of the position taken by that court.

The remaining question is, do the facts of this case bring it within the reason of that case so as to render void the limitation of liability contained in the pass issued to Watson?

The opinion in Railway Co. v. McGown presents this state of facts. The railroad was a *public* carrier of passengers. McGown had a legal right to purchase a ticket and to ride upon the train. The railroad company was under the duty by law to carry McGown. The public are interested in preserving the utmost diligence on the part of the carrier. McGown, one of the public, could not contract for a relaxation of diligence on the part of the public carrier, because negligence as to one passenger would be negligence to all who were riding in the same car or on the same train. In the instant case the plaintiff in error was a *private* carrier, carrying no freight except its own, nor passengers but its employees and the contractor's hands, just as a farmer often carries his laborers to the cotton field and returns them to the headquarters. Watson had no right to ride upon that train; the plaintiff owed him no duty of carriage; it was strictly a private matter in which the public was not concerned. The distinction is clearly shown by Judge Stayton in Railway Co. v. McGown in this language:

"The relation of passenger and carrier is created by contract, express or implied, but it does not follow from this that the extent of liability or responsibility of the carrier is, in any respect, dependent on a con-

tract. In reference to matters indifferent to the public, parties may contract as they please; but not so in reference to matters in which the public has an interest."

The public had no interest in the carriage of Watson, who had no right to ride on the train, and the plaintiff in error was under no duty to carry Watson; therefore, it was a proper subject of contract between them.

The case nearest in point that we have found is Shoemaker v. Kingsbury, 12 Wall., 369. Shoemaker was a contractor for building a railroad and operated a construction train to transport material and employees. Kingsbury sought the privilege of riding on the construction train and was permitted to do so for a compensation paid, and was injured. He sued the contractor for damages and had judgment in the trial court which, upon removal to the Supreme Court of the United States, was reversed. Justice Field, delivering the opinion, said:

"From the whole evidence in this case it is plain that the defendants were not common carriers of passengers at the time the accident occurred, which has led to the present action. They were merely contractors for building the Eastern Division of the Union Pacific Railway, and were running a construction train to transport material for the road. The entire train consisted, besides the engine and its tender, of cars for such material and what is called in the testimony a 'caboose car.' This latter car was intended solely for the accommodation of the men connected with the train; it contained their bunks and mattresses; they slept in it, and deposited in it the lamps of the cars, and the tools they used. It was not adapted for passengers, and, according to the testimony of the conductor, the defendants did not wish to carry passengers, although when persons got on to ride the defendants did not put them off, and sometimes, though not always, fare was charged for their carriage."

That case is quite analogous in its main features to this and sustains the position that a private carrier for hire is not liable for such injuries.

It is urged upon this court that the Lumber Company was to be benefited by Watson's trip through his employment by the contractor; therefore, it was carrying him for hire. If we admit that to be correct, it would not make it a public carrier, therefore, obliged to carry Watson. The benefit to be derived to the Lumber Company was so remote that it could not be regarded as a consideration. If the contractor had employed Watson and he labored to carry out the contract, the company would have had the privilege of paying the contractor for the result of Watson's labor.

We deem it unnecessary to cite other authorities or to state other reasons to sustain our conclusion that Watson and the Lumber Company had the right to make the contract of exemption, therefore the contract was valid. If Watson had lived he could not have recovered, hence the plaintiffs can not recover.

It is ordered that the judgments of the District Court and Court of

Civil Appeals be reversed and that judgment be here entered for plaintiff in error with all costs.

*Reversed and rendered.*