## MAGNOLIA PETROLEUM CO. et al. v. HAMILTON. (No. 2721.)

(Court of Civil Appeals of Texas. Texarkana. April 23, 1923. Rehearing Denied May 3, 1923.)

1. **Death** <span>&cong;33</span>—Delivery truck held "other vehicle" within statute rendering owner liable for negligence.

A motor truck owned by a petroleum company and used to convey its goods to customers is included within the term "other vehicle," as used in Vernon's Sayles' Ann. Civ. St. 1914, art. 4694, subd. 1, making the owner of any railroad, steamboat, stagecoach, or "other vehicle for the conveyance of goods or passengers," liable for death caused by negligence.

2. **Master and servant** <span>&cong;204(1)</span>—Risk of using obscured crossing assumed by railway employee within federal act.

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of a motor car engineer from collision between the motor car and a motor truck at a crossing, *held*, that notwithstanding defendant's negligence in permitting grass to grow alongside the right of way, obscuring the crossing, decedent, having knowledge of such obstruction, assumed the risk of operating his car thereover.

Appeal from District Court, Grayson County; F. E. Wilcox and Silas Hare, Judges.

Action by Mrs. C. E. Hamilton, administratrix, against the Magnolia Petroleum Company and another. From a judgment for plaintiff, defendants appeal. Affirmed as to defendant named. Reversed and rendered as to defendant St. Louis, San Francisco & Texas Railway Company.

This appeal is from a judgment in favor of appellee as administratrix of the estate of C. E. Hamilton, her deceased husband, against appellants, the Magnolia Petroleum Company and the St. Louis, San Francisco & Texas Railway Company, for the sum of $14,500, the damages a jury found she was entitled to recover for the death of said C. E. Hamilton, caused, she alleged, by the negligence of said appellants.

It appears from the record that Hamilton was killed July 29, 1920, at a point in Grayson county where a public road crossed the railway company's track, as the result of a collision between one of the railway company's passenger trains and an automobile truck owned by the petroleum company. The railway company engaged in interstate commerce as a common carrier by railroad, and Hamilton was employed by it in such commerce within the meaning of the federal Employers' Liability Act (sections 8657–8665, U. S. Comp. Stats.). The train consisted of a motor car and another car. Hamilton was the motorman, or engineer, and had charge of and was operating the engine of the motor car. The automobile truck was loaded with 200 gallons of gasoline in cans holding 10 gallons each, and 120 gallons of kerosene oil, also in cans. One Allen, an employee of the petroleum company, had charge of and was driving the truck. The railway company's track ran north and south and was straight for more than 400 yards in each direction from the crossing. The public road ran west of, near to, and parallel with said track for quite a distance as it approached the crossing from the north. At the time the accident occurred, the motor car was moving north, and the truck, having followed the public road south to the crossing, was moving east on same across the railway company's track. The only obstruction to the view of the motorman of the public road north of the crossing and to the view of the driver of the truck of the railway company's track south of the crossing was dirt dumped on the west side of the railway company's right of way a short distance south of the crossing, on which Johnson grass and weeds had been permitted to grow to a height of three or four feet. The greatest height of this dump and the grass and weeds growing upon it from the level of the track was something like 10 or 11 feet.

Special issues covering grounds of negligence set up by appellee in her petition and defenses set up by appellants in their answers were submitted to the jury, and in response thereto they made findings as follows: (1) That grass and weeds were growing upon the railway company's right of way "on the west side of its track adjacent to the crossing" at the time the collision occurred. (2) That said grass and weeds did not prevent Hamilton "from seeing the oil truck in question until it was on the railway company's right of way and about to go upon said crossing." (3) That the railway company was guilty of negligence in permitting said grass and weeds to grow and remain upon the right of way. (4) That such negligence was a proximate cause of the collision. (5) That Hamilton did not assume the risk incident to grass and weeds growing on said right of way. (5a) That the death of Hamilton was "directly and proximately a result of said risk." (6) That the driver of the automobile truck saw the train before it reached the crossing in time, in the exercise of ordinary care, "to have stopped his truck and thus have avoided the collision." (7) That the driver of the truck was guilty of negligence "in failing to stop said truck before it collided with the motor car." (8)

That such negligence "directly and proximately caused or contributed to cause" the death of Hamilton. (11) That the driver of the truck did not keep a lookout for cars on the railroad track as he was approaching the crossing. (12) That said driver was guilty of negligence in failing to keep such lookout. (13) That such negligence was a "direct and proximate cause, or contributing cause of the collision in question." (14) That the driver of the truck was "guilty of negligence in the rate of speed at which he approached the crossing." (15) That the driver of the truck, "had he approached the crossing at a lesser rate of speed than he was going," would by the exercise of ordinary care have discovered the approach of the train before it reached the crossing "in time for him to have stopped his truck, and thereby have avoided the collision." (16) That said driver's negligence in approaching the crossing at the speed he did was a direct and proximate cause of the collision. (17) That Hamilton blew the whistle and rang the bell of the motor car as his train approached the crossing as required by law. (20) That the death of Hamilton was not the result of accident. (21) That Hamilton did not fail to keep such a lookout for persons at or near the crossing as an ordinarily prudent person would have kept under the same or similar circumstances.

Freeman, McReynolds, Hay & Wolfe and Head, Dillard, Smith, Maxey & Head, all of Sherman, W. F. Evans, of St. Louis, Mo., Goree, Odell & Allen, of Fort Worth, and W. H. Francis and A. S. Hardwicke, both of Dallas, for appellants.

Wood & Wood and Chas. Batsell, all of Sherman, for appellee.

WILLSON, C. J. (after stating the facts as above). The petroleum company does not deny that the driver of the truck was guilty of negligence as shown in the findings of the jury, but insists, if he was and his negligence was a proximate cause of the collision, it nevertheless was not liable as determined by the judgment. The insistence is based on testimony showing it to be a common-law trust, joint-stock association or partnership that it was not a common carrier of goods or passengers, and that the truck was used by it for the purpose alone of conveying its own goods to its customers. It urges the fact that a cause of action for the death of Hamilton did not exist against it at common law, and asserts that it was not within the terms of the statute creating a cause of action for damages for the death of a person.

Prior to 1913, when an attempt was made to amend it by the act approved April 7, 1913 (Gen. Laws, p. 288 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4694]), entitled "An act to amend article 4694 of the Revised Civil Statutes of 1911, giving cause of action where injuries resulting in death is caused by the negligence of a corporation, its agents or servants, and declaring an emergency," the statute was as follows:

"Art. 4694. An action for actual damages, on account of injuries causing the death of any person may be brought in the following cases:

"1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer, of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents; when the death of any person is caused by the negligence or carelessness of the receiver or receivers or other person or persons in charge or control of any railroad, their servants or agents, and the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery, or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad were being operated by the railroad company.

"2. When the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another."

The material change proposed in the amendatory act was the addition of the words "person or corporation, their agents or servants," after the word "another" in the second clause of the statute so as to make the same read as follows:

"2. When the death of any person is caused by the wrongful act, neglect, unskillfulness or default of another person or corporation, their agents or servants."

The petroleum company, though a common-law trust, joint-stock association or partnership, as asserted, was a "person," and therefore liable for the conduct of its agents and servants, within the meaning of the second clause, set out above, of the amendatory act. It does not contend that it was not, but insists that the amendatory act was inoperative and void so far as it undertook to create a liability on the part of a person for the conduct of his agents or servants, because obnoxious to the provision in section 35 of article 3 of the Constitution that "no bill * * * shall contain more than one subject, which shall be expressed in its title." A like contention was made in Rodgers v. Tobias, 225 S. W. 804, and was upheld by the Court of Civil Appeals for the First District. The Supreme Court refused to grant a writ of error in that case, and the holding was followed by the Court of Civil Appeals for the Eighth District in Anderson v. Smith, 231 S. W. 142, and by the Court of Civil Appeals for the Fourth District in Oberstone v. Armendariz, 244 S. W. 644, and was approved by this court in Schaff v. Merchant, 250 S. W. 465, decided April 11, 1923, and not yet (officially) reported.

Assuming, as we do, that the ruling in the Tobias Case was correct, it follows that if the petroleum company was liable for the damages recovered against it, it was only

because the truck was a "vehicle for the conveyance of goods" within the meaning of those words as used in the first clause of the statute.

[1] It was not disputed in the testimony that the truck was a "vehicle for the conveyance of goods" and that it was being used for that purpose at the time the collision occurred. The contention is that the vehicle referred to in the statute was one used by a common carrier in his business as such, whereas the truck in question was intended for use and was used for the purpose alone of conveying goods of the petroleum company to its customers. Several cases are cited by the petroleum company as supporting its view of the statute, and the opinions in some of them contain expressions which do support it. But in none of the number, unless Bank v. Hanks, 104 Tex. 320, 137 S. W. 1120, Ann. Cas. 1914B, 368, and Pulon v. Packing Co. (C. C.) 182 Fed. 356, are exceptions, was the court called upon to determine the question with reference to facts like those in this case. In the Hanks Case an elevator used in a six-story office building to convey passengers was held not to be a vehicle within the meaning of the statute, and in the Pulon Case it was held on the authority of the Hanks Case, mainly, that a large wagon owned by the packing company was not such a vehicle. In the Hanks Case the Supreme Court, applying the rule known as the "ejusdem generis rule," that "where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will be restricted by the particular designation in such statute," concluded that the phrase "or other vehicle for the conveyance of goods or passengers" should be construed as if it read, "or other like vehicles," etc. After expressing doubt whether there was a passenger elevator in use in Texas in 1860, when the statute was enacted, the court said they thought it was meant "to apply to agencies and carriers transporting passengers and freight from some point of origin to some more or less distant point of destination. This is of necessity applied in every act of carriage of freight or passengers by either railroad, steamboat or stagecoach. In the nature of things, their engagements and works of transportation never contemplated a mere journey from one story of a building to another, and to us it seems clear that when the Legislature used the term 'other vehicle' it meant a vehicle performing, substantially at least, the same office and serving the same necessities." Whatever force the reasoning of the court has when applied to an elevator, we think it has none when applied to an automobile truck like the one in question here. The truck was used by the petroleum company in carrying goods like a railroad, steamboat, and stagecoach carries them; that is, "from some point of origin to some more or less distant point of destination." The truck in the use made of it, therefore, was a vehicle like a railroad, steamboat, and stagecoach, and, unlike an elevator, was not excluded as a "vehicle" within the meaning of the statute by the rule of ejusdem generis applied by the court in the Hanks Case. The Pulon Case was more like the instant one, but in that case it did not affirmatively appear, as it does in this one, that the vehicle was used to carry either goods or passengers. Sid Westheimer Co. v. Piner, 240 S. W. 985, was more like the instant case, and we think the Court of Civil Appeals there correctly determined the meaning of the statute to be to the contrary of the petroleum company's contention. It appeared in that case that the plaintiff's husband was killed on a public street in Houston by an automobile used by the defendant in its business as an undertaker. In affirming a judgment for the plaintiff the court said:

"Automobile ambulances and automobile seven-passenger touring cars are certainly vehicles, and the owners of such vehicles, when they are being operated for the conveyance of goods or passengers, are liable by the express terms of the statute for the death of any person caused by the negligence of the agent or servant of the owner in the operation of the vehicle. It is not necessary, in order to fix liability under [the first] subdivision of the statute, to allege or prove that the business of the owner of the vehicle was that of a public or common carrier. The purpose of the statute is broad, and it was not enacted for the protection only of passengers and shippers, but was manifestly designated to protect the public by giving a right of action for injuries resulting in death regardless of whether the deceased was a passenger or the owner of the vehicle was operating it as a common carrier, and it would largely defeat the manifest purpose of the statute if it should be construed to give a cause of action only against common carriers, and our courts have not so construed it. Cunningham v. Neal, 101 T. 338; Lodwick Lumber Co. v. Taylor, 39 Tex. Civ. App. 302, 87 S. W. 358; Sullivan-Sanford Lumber Co. v. Watson, 106 Tex. 4, 155 S. W. 179."

The Supreme Court granted a writ of error in the Piner Case, on the ground as shown by its docket, appellee states in her brief, that it was in conflict with the Hanks Case. As we understand it, the ruling in the Hanks Case was not based on the view that the elevator was not a vehicle used by a common carrier, but on the view that it was not a vehicle in the use made of it like either a railroad, steamboat, or stagecoach, while the ruling in the Piner Case was based on the view that an automobile used to carry goods or passengers was a vehicle in the use made of it like a railroad, steamboat, or stagecoach. If the ground of the ruling in the Hanks Case was as stated, we feel sure that when the Supreme Court reaches the Piner Case for further consideration, whatever may be their opinion as to the correct-

ness of the ruling made in it, and made here, they will not find that ruling to be in conflict with the one made in the Hanks Case.

The main contentions made by the railway company are: First, that negligence on its part could not be predicated upon its permitting weeds and grass to be on its right of way; second, that if it could, and it was guilty of negligence in that respect, it nevertheless was not liable as determined by the judgment because it appeared that such negligence was not a proximate cause of the collision; and, third, that if it was guilty of negligence in the respect stated which was a proximate cause of the collision, appellee still was not entitled to recover against it because it appeared, it asserts, that the risk arising from such negligence was one Hamilton assumed.

[2] We think the contention first stated should be overruled (Eames v. Ry. Co., 63 Tex. 660), but are inclined to think it appeared from the testimony as a matter of law that the failure of the railway company to remove the weeds and grass from its right of way was not a proximate cause of the accident, and therefore that the second one of the contentions should be sustained. Whether it should or not need not be determined, however, as we are of the opinion the third one of the contentions should be sustained, and appellee concedes that her right to recover against the railway company rests upon the federal statute, which, in a case like this one is, leaves the defense of assumed risk as it exists at common law unimpaired.

At common law the servant assumed not only the ordinary risks of the service he undertook to perform, but also the risks resulting from the negligence of the master of which he knew and the danger of which he appreciated. 3 Labatt's Master and Servant, par. 1186a et seq. Hamilton was 61 years of age. It appeared without dispute in the testimony that he had been working for the railway company as an engineer for 21 years; that he had had charge of the operation of the motor car from Dallas to Sherman for 7 years; and that twice daily for the 20 consecutive days immediately preceding the day the collision occurred he operated the car from Dallas to Sherman and from Sherman back to Dallas, each time passing the point on the railway company's line where the accident occurred. It was his duty to keep a lookout for persons approaching the crossing on the public road. If he discharged that duty, and we think it should be assumed that he did, it cannot be doubted that he knew weeds and grass were growing on the right of way as shown by the testimony. If he knew that, it cannot be doubted, when his age and experience are kept in mind, that he appreciated the additional risk he incurred in operating the car over the crossing because of the existence of the weeds and grass

on the right of way. Ry. Co. v. Hynson, 101 Tex. 543, 109 S. W. 929. Knowing of the railway company's conduct in the respect stated, and appreciating the risk arising therefrom, he was within the applicable rule, and we see no escape from the conclusion that the railway company was not liable to appellee for the consequences of the collision.

The judgment will be affirmed so far as it is against the petroleum company. It will be reversed so far as it is against the railway company, and judgment will be here rendered that appellee take nothing by her suit against it.