Affirmed and Majority and Concurring Opinions on En Banc Review filed
August 25, 2009








Affirmed and Majority and
Concurring Opinions on En Banc Review filed August 25, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00860-CV

_______________

 

MARJORIE ROSS, JOAN SEELBACK, TIMOTHY R. ROSS, JAMES
R. ROSS, BILLY R. ROSS, AND ROBERT R. ROSS, Appellants

 

V.

 

UNION CARBIDE CORPORATION, Appellee

                                                                                                      
                                         

On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 2003-22885

                                                                                                               
                                

 

C O N C U R R I N G   O P I N I O N
 O N  E N  B A N C  R E
V I E W 

I agree that the outcome and the
court=s analysis follow established
precedent.  However, in this case, it appears that the interests of some of the
wrongful-death beneficiaries may not have been fairly represented in their
parents= settlement with the Center for
Claims Resolution.  Therefore, I reluctantly concur in the result.








The Texas Supreme Court recently
re-affirmed the longstanding holding that, because the rights of wrongful-death
beneficiaries are entirely derivative, a decedent=s pre-death contract may limit, if
not extinguish, the beneficiaries= rights to maintain a later suit for
damages.  See In re Labatt Food Serv., L.P., 279 S.W.3d 640, 644 (Tex.
2009) (orig. proceeding).  That principle was already well-established[1]
before this court issued Perez v. Todd Shipyards Corp.[2]
and, as an intermediate court of appeals, the court is not free to disregard
established Texas Supreme Court precedent.  See Lundstrom v. United Servs.
Auto. Ass=n-CIC, 192 S.W.3d 78, 94 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied).  Thus, the court correctly holds that the settlement executed by Homer
and Marjorie Ross extinguished any future claims their children might have had
against Union Carbide Corp.  However, I respectfully submit the Texas Supreme
Court should revisit the question of whether one party can unilaterally
extinguish the rights of another person to sue for his own damages.

A beneficiary child=s right to pursue a wrongful death
claim does not mature until the parent is deceased.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 71.002(a) (Vernon 2008) (AAn action for actual damages arising
from an injury that causes an individual=s death may be brought if liability exists
under this section.@) (emphasis added).  Such claim, under the circumstances,
belongs exclusively to the child and only the child can decide whether to
pursue it.  See, e.g., TXI Transp. Co. v. Hughes, 224 S.W.3d 870, 921
(Tex. App.CFort Worth 2007, pet. granted) (observing that child=s cause of action differs from parent=s) (citing Bleeker v. Villarreal,
941 S.W.2d 163, 170 (Tex. App.CCorpus Christi 1996, writ dism=d by agr.)).  The parent should have
no right to affect a choice that does not exist until that parent is deceased. 
The fact such a claim is derivative should not affect determination or
choice.  Being derivative is merely the procedural mechanism through which a
wrongful-death claim exists; it should not be outcome-determinative.








Because a parent does not own such a
claim and has no legal interest in the claim, that parent should have no say in
whether a child pursues the claim.  This is a matter of choice, not a matter of
chance.  To destroy a child=s rights before a parent=s death, when those rights do not
even exist until after the death, is just wrong.

When the settlement was consummated
in 1993, the children probably would not yet have had a viable cause of action
for their father=s injury.  That is, the record does not indicate that Homer
had suffered Aserious, permanent, and disabling injuries@ of the sort that would have enabled
the children to pursue a loss-of-parental-consortium suit.  See Reagan v.
Vaughn, 804 S.W.2d 463, 467 (Tex. 1990).  Still, a wrongful-death action
would not have been ripe in 1993, eight years before Homer=s death.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 71.002(a).  








Even so, in their pleadings, Homer
and Marjorie contemplated that Homer=s condition might be terminal:  A[Homer=s] future outlook is very dim.  He has
sought the services of physicians in an effort to cure or arrest the condition
from which he is suffering, but to no avail.@  Having thus anticipated the
probability that Homer=s asbestos-related disease would be life-threatening, they
nevertheless agreed to a settlement that expressly released their claims and
their children=s eventual wrongful-death claims.  See Mo.-Kan.-Tex. R.R. Co. of Tex.
v. Pluto, 138 Tex. 1, 156 S.W.2d 265, 267B68 (1941) (holding that father who
agreed to lump-sum settlement for both his and his son=s injuries had interests that
conflicted with his son=s).  The settlement paperwork does not recite that any
of the funds were paid to, or held in trust for, the children whose potential
claims were released.  Yet, because the children were not named as parties to
that 1989 lawsuit, Rule 173 apparently did not require that a guardian ad litem
be appointed to protect their interests.[3] 
Thus, the children, whose probable interests were not represented, forever lost
the right to later pursue claims for their own uncompensated damages.

Texas has a public policy of
encouraging the peaceful resolution of disputes, including Homer=s and Marjorie=s claims against Union Carbide.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 154.002 (Vernon 2005); Tex. Dep=t of Transp. v. Ramming, 861 S.W.2d 460, 469 (Tex. App.CHouston [14th Dist.] 1993, writ
denied).  At the same time, Texas law also promotes the notion that a party=s interests should not be decided
without affording them the opportunity to have some say in the outcome.  See,
e.g., Benson v. Wanda Petrol. Co., 468 S.W.2d 361, 364 (Tex. 1971)
(discussing refusal to apply collateral estoppel to plaintiff Awho had no voice in the conduct of
the prior suit, with no right to examine witnesses or to take other action to
protect his interests@) (citations omitted); Ashworth v. Brzoska, 274 S.W.3d
324, 333 (Tex. App.CHouston [14th Dist.] 2008, no pet.) (overturning default
judgment against party who did not receive notice of trial setting); Bellino
v. Comm=n for Lawyer Discipline, 124 S.W.3d 380, 387 (Tex. App.CDallas 2003, pet. denied) (upholding
disbarment of attorney who settled clients= claims without obtaining their
consent); Tex. Disciplinary R. Prof=l Conduct 1.02(a)(2), reprinted in
Tex. Gov=t Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R.
art. X, ' 9) (A[A] lawyer shall abide by a client=s decisions . . . whether to accept
an offer of settlement of a matter . . . .@); Tex. R. Civ. P. 173 (ensuring that
interests of a minor, if a party to the suit, are represented by next friend or
guardian ad litem).








If a court, in order to protect the
integrity of the legal process as it deals with minor children, is required to
approve the procedure and amount when settlement monies are given to a child, see
Tex. R. Civ. P. 44, it should also approve the procedure when a legal right to
pursue such money is taken away from the child.  See Pluto, 156 S.W.2d
at 268 (A[A minor=s] interests, must, in good faith, be
fully protected; he is non sui juris and altogether under the court=s protection.@) (italics added).  In the present
case, no such effort was made to protect those rights.

Instead, because Homer and Marjorie
were permitted to settle claims that did not belong to them, and that they
otherwise had no right to control, the Ross children had no input whatsoever in
the release of their claims.  Although this outcome is dictated by established
Texas Supreme Court precedent, it is contrary to public policy and should be
revisited.  Therefore, I reluctantly concur.

 

 

 

/s/        Frank C. Price

Senior Justice

 

En banc court consists of Chief
Justice Hedges; Justices Yates, Anderson, Frost, Seymore, Guzman, Brown, and
Sullivan; and Senior Justice Price.* (Guzman, J., majority) (Frost, J.,
concurring) (Price, S.J., concurring) (Boyce, J., not participating).









[1]  See Travelers Indem. Co. of Ill. v. Fuller,
892 S.W.2d 848, 851B52 (Tex. 1995); Russell v. Ingersoll-Rand Co.,
841 S.W.2d 343, 347 (Tex. 1992); Sullivan-Sanford Lumber Co. v. Watson,
106 Tex. 4, 155 S.W. 179, 179 (1913); Thompson v. Fort Worth & Rio
Grande Ry. Co., 97 Tex. 590, 80 S.W. 990, 991B92 (1904).





[2]  999 S.W.2d 31 (Tex. App.CHouston [14th Dist.] 1999), pet. denied, 35
S.W.3d 598 (Tex. 2000).





[3]  Before Rule 173 was rewritten in 2005, it provided, AWhen a minor . . . is a party to a suit either
as plaintiff, defendant or intervenor and is represented by a next friend or a
guardian who appears to the court to have an interest adverse to such minor . .
. the court shall appoint a guardian ad litem for such person . . . .@  Tex. R. Civ. P. 173 (Vernon 2004, amended 2005)
(emphasis added).  Although the rule has since been rewritten, the new
incarnation apparently retains the requirement that the minor be a Aparty.@  See Tex.
R. Civ. P. 173.2(a) (AThe court must appoint a guardian ad litem for a party
represented by a next friend or guardian only if:  (1) the next friend or
guardian appears to the court to have an interest adverse to the party,
or (2) the parties agree.@) (emphases added).





*  Senior Justice Frank C. Price sitting by assignment.