

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00161-CV

RICHMONT HOLDINGS, INC.,
NUKOTE HOLDING, INC., NUKOTE
INTERNATIONAL, INC.,
INKBRARY, LLC, SUPERIOR
ACQUISITIONS LLC, JOHN P.
ROCHON, SR., JOHN P. ROCHON,
JR., KELLY KITTRELL, RUSSELL
MACK, C & R SERVICES, INC.,
AND KENNETH R. SCHLAG

APPELLANTS

V.

SUPERIOR RECHARGE
SYSTEMS, L.L.C. AND JON BLAKE

APPELLEES

----------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

Appellants Richmont Holdings, Inc.; Nukote Holding, Inc.; Nukote International, Inc.; Inkbrary, LLC; Superior Acquisitions LLC; John P. Rochon, Sr.; John P. Rochon, Jr.; Kelly Kittrell; Russell Mack; C & R Services, Inc.; and Kenneth R. Schlag appeal from the trial court's denial of their motion to compel arbitration in the suit brought against them by Appellees Superior Recharge Systems, L.L.C. and Jon Blake. In one issue, Appellants argue that Appellees failed to carry their burden of proving that Appellants waived their right to arbitration. Because we hold that the trial court did not abuse its discretion by denying Appellants' motion to compel arbitration, we affirm the trial court's order.

## The Judicial Proceedings Below

*Appellees' Lawsuit and Appellants' Motion to Transfer*

In 2007, Blake entered into an employment agreement with Superior Acquisitions, in connection with Superior Acquisitions' purchase of C & R and Superior Recharge. Blake lived in Denton County and received his salary by direct deposit in Denton County. Superior Recharge manufactured ink cartridges in Dallas County, although the principal place of business was in Denton County. The employment agreement was to be performed in Denton County and contained a non-compete agreement.

The employment agreement provided that Blake would be employed by the company he had sold for a period of two years, and would become an "at-will" employee upon expiration of the two years. Blake would be employed initially in the capacity of General Manager, or in such other positions to which the company

2

might assign him. The employment agreement also provided for compensation and annual raises based on "no less than the Cost of Living increases for that period as shown in the Consumer Price Index, or possibly a greater percentage increase, dependent on Company performance and the discretion of Company management." Compensation also included annual bonuses equal to ten percent of the company's annual earnings before interest, taxes, depreciation and amortization generated by the acquired operations and customers of Superior Recharge.

The company agreed, in the employment agreement, to provide Blake with "confidential information" regarding pricing methods, "[c]ustomer identities, contracts, lists, relationships and preferences," research and development, profits, sales, business strategies, and plans for future development. Essentially, the company agreed to provide Blake with all information regarding the affairs and business of the company's customers and clients that Blake "has access to as a result of his employment with" the company. The employment agreement stated that "venue for any dispute related to this [e]mployment [a]greement shall be exclusively in state or federal court in Dallas County, Texas."

Six months after entering into the agreements, Blake was fired and bound by the non-compete provisions of the employment agreement.

In June 2008, Superior Recharge and Blake filed suit in Denton County against Richmont Holdings; Nukote Holding; Nukote International; Inkbrary; Superior Acquisitions; Rochon, Sr.; Rochon, Jr.; Kittrell; and Mack (all the

3

appellants in this case except C & R and Schlag). Appellees sought a declaratory judgment that a covenant not to compete—signed by Blake in the employment agreement—was unenforceable.

At the October 2, 2008 hearing on change of venue in Denton County, Appellants argued that Denton County was not a convenient forum because their office was in Dallas County. They assured the trial court that they needed time "to do some discovery to figure out how they're contending that there is some basis for venue here in Denton County." Appellees offered to replead and asked for ten days. Appellants wanted to "bifurcate" their discovery, and argued that if the trial judge intended them to be "restricted to doing the depositions once, if you will, as opposed to bifurcating it, we need to send out some interrogatories, requests for production, and depose his client. So, you know, we're probably going to need at least 45 days. . . . Sixty [days from the time Plaintiffs replead] would be better." The trial court assured Appellants he was "not even going to put a date on it." Appellant responded, "Okay. Fair enough."

Appellants filed a motion to transfer venue to Collin County. Appellants subsequently filed an amended motion to transfer venue, stating that Appellees' cause of action was premised upon Blake's employment agreement, and that, in accordance with the agreement's mandatory venue provision, Dallas County was the proper county for suit. The amended motion argued alternatively that Collin County was the proper county.

4

On October 20, 2008, Superior Acquisitions sued Blake in Dallas County for breach of contract, breach of fiduciary duty, and civil theft, based on "Blake's failure to perform his duties under the terms of his employment contract, and his misappropriation of company funds." The Dallas County trial court abated this case until the venue issue in Appellees' Denton County suit had been decided.

On June 18, 2009, Appellees filed an amended petition for declaratory judgment, injunction, and damages in challenging the terms of the employment agreement, reurging their previous complaints and adding additional complaints and details regarding fraud in the inducement to sign the asset purchase agreement as grounds for challenging the validity of the non-compete terms of the employment agreement. They filed their second amended petition for declaratory judgment, injunction, and damages on August 7, 2009, pleading with greater specificity, but requesting the same relief.

Appellees added C & R and Schlag as defendants in their second amended petition. C & R and Schlag then filed their own motion to transfer venue to Dallas, or, alternatively, to Collin County. No order on the motions to transfer venue appear in the appellate record. No one raised the question of arbitration.

*Appellants' Motion for Continuance*

Appellants refused to provide requested discovery, and, despite their October 2008 representations to the trial court, conducted no discovery. Appellees filed a motion to compel discovery and for discovery sanctions, and the hearing on the matter was set for December 21, 2009. Appellants filed a motion

for continuance on December 18, 2009. Appellants' attorney stated that he had suffered a medical emergency, had been ordered not to walk or put pressure on his foot, and was under the influence of "strong medication," and, accordingly, he asked the court for a continuance.

No order on the motion appears in the record, but the trial court apparently held the hearing as scheduled; on January 6, 2010, the trial court signed an order noting that the court had conducted the hearing on December 21, 2009, and ordering Appellants to respond without objection to each of Appellees' discovery requests and to deliver any documents sought by Appellees in discovery to Appellees' counsel by March 21, 2010. The trial court also ordered Appellants to pay $5,550.50 in sanctions to Appellees' counsel by that date. As of May 7, 2010, Appellants had not complied with the court's order to pay the $5,550.50. The order compelling discovery also provided that Appellants' pleadings would be struck if they did not comply with the order.

In January 2010, Appellees filed a motion to consolidate their suit with one that had been filed by a different plaintiff in Denton County against Richmont Holdings; Inkbrary; Rochon, Sr.; Rochon, Jr.; Kittrell; Schlag, and others not involved in Appellees' suit. The motion asserted that Richmont Holdings was the parent company of all the entities involved in both suits and that both actions evolved out of Richmont Holdings' actions "to perpetuate a scheme to monopolize the market for remanufacture and sale of . . . printer cartilages [sic]." The motion also states,

6

5. Defendants in the Blake action have stonewalled Plaintiffs in getting discovery which would adequately establish venue and facts giving into the latter of conduct which establishes liability and in information and belief that the facts which support the attempt to monopolize in the first case would also support the attempt to monopolize in the second case.

6. Plaintiffs' attorney, Stephen D. Colbert, has received permission from all Defendants to consolidate these actions and the consolidation will result in judicial economy and convenience.

The "first case" referred to in the motion is the underlying employment and non-compete suit in this case, and the "second case" is the suit with which Appellees wished to consolidate their action.

*Appellants' Motion to Compel Arbitration and Motion to Stay Discovery*

On January 27, 2010, two days after Appellees filed their motion to consolidate, Appellants, for the first time, filed a motion to compel arbitration in Appellees' case. They alleged that Appellees' suit arose out of the asset purchase agreement, which contained an arbitration clause. Appellants asked the trial court to compel arbitration in accordance with the asset purchase agreement and either dismiss the suit or stay the proceedings.

As the March 21, 2010 deadline to comply approached, the trial court had not yet ruled on Appellants' motion to compel arbitration. On March 15, 2010, Appellants filed a motion asking the trial court to stay discovery on the merits until after the court had ruled on their motion for arbitration. Appellants also filed an original proceeding in this court. On March 19, 2010, this court stayed until further notice the trial court's January 6, 2010 order compelling discovery and

7

stayed all other proceedings in the trial court in the same cause until further notice except for any proceedings relating to the hearing of or ruling upon Appellants' motion to compel arbitration.

On the same date, Appellees filed in the trial court a response to the motion to compel arbitration. They noted that Appellants had invoked the judicial process by filing suit in Dallas County on claims that involved the same transaction as the one which they based their claims against Appellants. They also asserted the following facts, which they alleged showed that Appellants had waived arbitration:

- Appellants had not produced any documents in response to Appellees' requests for production;

- A hearing on the motion for sanctions had originally been set for September 2009 but was rescheduled for a date in October;

- A meeting was scheduled between counsel for the parties to review discovery requests, and to which Appellants' counsel was supposed to bring production documents, but this meeting was rescheduled at Appellants' counsel's request due to illness;

- Appellants' counsel also asked to reschedule the hearing on the motion for sanctions (also due to illness), and the hearing was rescheduled for November 13, 2009;

- Counsel for the parties met on November 9, 2009, and Appellants' counsel agreed to withdraw most of his objections to Appellees' discovery requests and to execute a Rule 11 agreement to submit discovery, and, in return, Appellees' counsel agreed to cancel the November 13, 2009 hearing on the motion for sanctions;

- Appellants' counsel did not sign the Rule 11 agreement, and, accordingly, Appellees reset the motion for sanctions hearing for December 21, 2009; and

- Appellants' counsel filed a motion for continuance on December 18, 2009 due to illness, but the trial court held the hearing and entered the order compelling discovery and granting sanctions against Appellants.

Appellants filed a reply stating, among other things, that the Dallas County suit "dealt with employment issues, such as civil theft, which is not a part of this lawsuit," and that the suit did not involve all of the same parties. They also asserted that they had not conducted discovery and therefore had not gained any information in the discovery process that they would not have been otherwise entitled to in arbitration and that Appellees would not be prejudiced by arbitration.

The trial court held a hearing on the motion to compel arbitration, and, on May 18, 2010, signed an order denying the motion to compel arbitration.[2] Appellants argued, in part, that they were entitled to arbitration because, by seeking no discovery and by ignoring repeated requests for discovery from Appellees, and by ignoring the trial court's order to compel discovery, they had done "nothing to gain an unfair advantage."

The trial court responded to this assertion by asking, "What motion to compel was heard in December of last year?" Appellants responded,

> [COUNSEL FOR APPELLANTS]: I believe that would be been [sic] Plaintiff's motion to compel the discovery they sent us, but we haven't sent them any discovery.

---

[2]In a May 25, 2010 memorandum opinion, this court denied as moot Appellants' petition for writ of mandamus and lifted its March 19, 2010 stay order. *See In re Richmont Holdings, Inc.*, No. 02-10-00085-CV, 2010 WL 2178927 (Tex. App.—Fort Worth May 25, 2010, orig. proceeding).

THE COURT: So you didn't comply with the rules, and you think that allows you to go to arbitration?

[COUNSEL FOR APPELLANTS]: One of the—one of the reasons public policy so favors arbitration, Your Honor, is because it is—it is—it is not as broad scope of discovery. And this—

THE COURT: And you get those discovery and you say—your client gets that discovery and you say, wow, we want to not have that broad scope of discovery. We'd rather go to arbitration. So you file a motion to arbitrate right then, and that prevents them from being prejudiced any further than they've already been prejudiced by coming up here, getting a motion to sanction where you—where your side didn't even show up.

Appellants complained to the judge that Appellees were trying to expand their case, and that Appellants waited to file their motion to compel arbitration until after Appellees filed their motion to consolidate. The trial court was not satisfied with Appellants' explanation for their dilatory tactics. Specifically, the trial judge stated,

Okay. And here is the way I see it, and you tell me why this isn't right: Back in October of 2008, y'all came to court and asked the Court for a ruling, and the ruling was that I'm going to reset the discovery, allow the—allow the Defendant to do some discovery and the Plaintiff to replead. Then nothing was done.

Appellants agreed. Then the judge and Appellants agreed that Appellees had sought discovery, Appellants had objected to providing the discovery and refused to provide it, and Appellees had requested and been granted an order to compel.

Right. And they got a motion to compel with the sanctions. You file a motion—you file a case in Dallas to encourage venue to be transferred to another district court in Dallas. And then about a month later after things haven't been going well for you in the courts,

10

the Dallas court stayed it, their case that you filed down there. I ruled against you on the motion to compel, and you hadn't done a bit of discovery that you asked the Court to give you time to do back in October of 2008. After everything was going bad for you in two different courts, then you file a motion to compel arbitration.

And that's the way I see it. And after you've ragged them around down to Dallas, back up here, motion for continuance so you can do discovery, you don't do any discovery. They have compiled discovery. You don't do the discovery. You object to it. They file a motion to compel. You don't show up for that, and you have ragged them around in two different counties. During all of that—you filed a motion to stay with the Court of Appeals, made them respond to that, and then you want to come and say they haven't been inconvenienced or there's nothing that's going to—this doesn't hurt them a bit to—now that things have gone sour on us in the courts, to compel discovery.

That's the way I see it. And why isn't that right?

Appellants denied they had substantially invoked the judicial process. The judge responded,

You've invoked the process. You just haven't followed through with anything you were supposed to do . . . like do discovery that you said you wanted to do back on October 2nd of 2008.

Appellants suggested that they ignored the discovery orders to preserve their right to arbitration, although they never mentioned arbitration to the court. They simply ignored the trial court's orders.

The trial court pointed out that Appellants themselves had moved for discovery and asked the trial court for a continuance to gain time for discovery. The court summarized the time line:

Well, in any event, the jurisdiction of this Court was invoked on October 2nd of 2008 by coming here to court and asking this Court

11

for a continuance of the change of venue, October 2nd, 2008, and the motion to compel discovery was filed in, when, January?

[COUNSEL FOR APPELLEES]: In July of '09.

THE COURT: The motion to compel arbitration was?

[COUNSEL FOR APPELLEES]: Oh, no. That was filed January 27th . . . [o]f 2010.

THE COURT: 2010. So well over a year later after all of this other activity has occurred in the case is the first time you mention arbitration.

Appellants did not deny their delaying tactics, but, rather, informed the trial court that, essentially, wasting the time of the trial court and of opposing counsel was an appropriate tactic to avoid providing discovery and to delay the plaintiffs' case, all without waiving arbitration. The trial court was not impressed.

I mean, the case is filed. Nobody does anything on it for two years, five years. It goes up on the dismissal docket, and they say, okay, well, we wanted it reinstated, and they say, okay, we want to compel arbitration. Perfect example.

. . . .

But all—in this case, you have all of that rolled into one. You have—you have filed a case yourself . . . in Dallas. Did you file for arbitration in Dallas?

[COUNSEL FOR APPELLANTS]: Well, that case has been stayed.

THE COURT: Did you file for arbitration when you filed that case, file it and say we want this sent to arbitration?

[COUNSEL FOR APPELLANTS]: No. My clients were under no duty to do so. The Texas Rules of Civil Procedure specifically allow for arbitration to be enforced by filing a lawsuit. . . .

12

THE COURT: Well, I understand. But you can do that simultaneous. In your petition, you can say, I want to file this lawsuit and automatically—and get it referred to arbitration. Now, I realize you are under no—that's not the only way you get to arbitration. But in this case, this Court had already—you had already come up to this Court, wanted the venue changed, and you went down there. You know, if you wanted to go to arbitration, instead of filing another lawsuit about the same subject matter in Dallas, just file for arbitration. . . . Instead of making them go to Dallas and defend two suits, get that stayed, go to the Court of Appeals, you know, and all of that, all you had to do was file a motion to arbitrate October 2nd of 2008.

. . . .

Instead of saying I want to wait and get some discovery and—and incur some costs and delays in order to pursue a judicial remedy, you just say I want to arbitrate. Right?

Appellants' position before the trial court and this court appears to be that they could waste as much of the trial court's time and resources as they wanted, so long as instead of complying with court–ordered discovery or providing or receiving any discovery, they ignored the court's orders and misrepresented to the court that they need to delay matters because they want discovery so long as they conduct no discovery. Counsel mentioned *Perry Homes* in arguing that Appellants could have completed all trial preparation short of trial or denial of Appellants' motion for summary judgment without waiving arbitration. The trial court responded,

I understand. And why is that? Because you didn't do the discovery that you said you wanted to do back on October 2nd of 2008 when you got this Court to give you a break and let it postpone it to do discovery. You did not answer the discovery that was propounded by the other side, and I don't—and if you want arbitration, you don't have to answer the discovery. Just file for a motion to arbitrate. But you

13

didn't do that. Instead you did nothing and required them to come forward and get a motion to compel. And only after a motion to compel and sanctions is held against you, then you want to—and you were—got an adverse ruling basically from the court in Dallas did you then want to compel arbitration.

Appellants then brought this appeal. To date, there has been no ruling on Appellees' Motion to Consolidate.

## Standard of Review

We review a trial court's denial of a motion to compel arbitration under an abuse of discretion standard. Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo.[3] Whether an agreement requires arbitration is a question of law.[4] A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the claims in dispute fall within the scope of that agreement.[5] Whether a party has waived arbitration by litigation conduct is also a question of law.[6]

---

[3]*In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

[4]*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986).

[5]*In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005).

[6]*Perry Homes v. Cull*, 258 S.W.3d 580, 587 (Tex. 2008), *cert. denied*, 129 S. Ct. 952 (2009).

## Whether Agreement Mandates Arbitration

Although Appellants argue that they did not waive arbitration and consequently that the trial court erred in denying their motion, waiver is not an issue unless the person demanding arbitration has first proved that the agreement that is the basis of the lawsuit requires arbitration. Both Appellants and Appellees took the position that the employment agreement was the basis of the lawsuit. That suit on the employment agreement did not involve arbitration, but, rather, established venue exclusively in the state and federal trial courts. The issue before the trial court, until the motion to consolidate, was solely whether venue properly lay in Dallas County, Collin County, or Denton County. Appellants did not adopt their contrary position that arbitration was exclusively mandated until Appellees moved to consolidate. Their position appears to be that if the motion to consolidate is granted, the consolidated lawsuit will involve the asset acquisition agreement, which includes an arbitration clause.

The trial court has not ruled on the motion to consolidate. Consequently, the only action before the trial court, and consequently now before this court, is the challenge to the non-compete provision of the employment agreement. The employment agreement has no arbitration provision. Rather, it mandates venue in the state or federal courts of Dallas County.

Because Appellants were the parties seeking to compel arbitration, they bore the burden of establishing that the agreement that was the subject of the dispute was governed by a valid arbitration agreement and of showing that the

claims in dispute fall within the scope of that agreement.  Not only did Appellants fail to sustain this burden, they argued that venue in the original Denton County challenge to the non-compete agreement was appropriate only in the trial courts of Dallas County because Appellees' cause of action was premised on the employment agreement.  The suit with which Appellees seek to consolidate their suit on the employment agreement is not before this court.  The two causes have not been consolidated.  The only cause of action before this court is the suit challenging portions of the employment agreement, which does not provide for arbitration.

On these bases, the trial court was justified in denying the motion to compel arbitration of the employment and non-compete agreement.

Given the specific facts of this case, and applying the appropriate standards of review, we hold that, as Appellants originally argued to the trial court, the original and amended pleadings deal with the employment and non-compete agreement, which does not contain an arbitration provision but, rather, requires resolution in a trial court, absent subsequent agreement to the contrary.  No portion of the original or amended pleadings seeks to litigate the provisions of the asset acquisition agreement, the only agreement containing an arbitration provision. We have not been asked to resolve any venue dispute, and consequently do not address venue in the employment and non-compete dispute.

As to Appellees' motion to consolidate, the lawsuit with which Appellees seek to consolidate their Denton County suit is not before this court.  The motion

to consolidate has not been ruled on, and we have not been asked to determine whether that suit is subject to the arbitration provision of the asset acquisition agreement. It is settled law that appellate courts should not provide advisory opinions in anticipation of a possible ruling by the trial court.

## Conclusion

Having overruled Appellants' sole issue regarding whether arbitration is required at this point, we affirm the trial court's denial of their motion to compel arbitration.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  November 3, 2011