

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00132-CV

IN RE CARLA LORENE COX             RELATOR

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. 14-00439

----------

## DISSENTING OPINION ON REHEARING EN BANC

----------

The majority's decision hinges upon facts that were disputed at best, thereby substituting its opinion for that of the trial court and infringing upon the role of the trial court as the finder of fact in this case. For this reason, I must respectfully dissent.

**Timeline**

2011–2012:          Assistant District Attorney Cary Piel and law student Eric Erlandson investigated the 2009 "cold case" murder for which Carla Cox was later indicted. (Piel continued to work on the case through 2014.)

January 31, 2013:    Carla Cox discharged Lee Tatum, her attorney, and hired new counsel.

August 2013:       Erlandson graduated from law school and went to work for Tatum as an attorney.

March 26, 2014:     Piel was appointed special prosecutor in the Carla Cox case.

**Discussion**

The majority relies upon the following to support its holding:

Erlandson graduated from law school and began working for Lee Tatum in August 2013. Erlandson is currently a partner with Tatum. While working for Tatum—who had represented Relator in this exact murder case— Erlandson discussed Relator's murder case "in general" with Piel and *until February or March 2014, Erlandson expected to try the Carla Cox murder case with Piel. In early 2014, Erlandson told a partner with Relator's present counsel that he was working on the case and was going to prosecute the case with Piel.* [Emphasis added.]

**A. The "In general" Discussions**

The majority's recitation of facts presumes that whatever "in general" discussions that occurred between Piel and Erlandson regarding the Cox case were, by some measure, substantive. The record actually supports the contrary.

When asked if he and Piel ever worked together on the Cox case after he became employed by Tatum, Erlandson stated "we never did." Erlandson further testified as follows:

2

Q. .... Mr. Erlandson, as far as discussing the Carla Cox case with Mr. Piel, *did you ever discuss anything -- anything about the -- any substantive information about the Carla Cox case with Cary Piel, at any time other than when you were interning at the Denton County D.A.'s Office?*

A. *No, ma'am.*

Q. Now, I listened to -- carefully to the questions that were being asked by Mr. Hunter Smith, and they were very artfully worded to make it sound like possibly, you were -- when you were working on the Roger Clark case, maybe you-all were comparing what was going on in that case with the Carla Cox case. Was there any similarity between the Carla Cox case and the Roger Clark case?

A. No ma'am.

Q. Did you -- when you were working on the Roger Clark case, were you discussing the Carla Cox case?

A. No, ma'am.

Q. *Since you left -- since Cary Piel left the Denton County D.A.'s Office in June of 2012, did you ever discuss substantively the Carla Cox case with Cary Piel?*

A. *No, ma'am.*

Q. After you came to work with Lee Tatum in August of 2013, did you ever discuss the case with Lee Tatum?

A. No, ma'am, other than just generalities of it being a big case in Cooke County and all that. [Emphasis added.]

And Piel testified no differently:

Q. .... [D]id you tell Mr. Erlandson that, no, he could not work on the case?

A. Yes, ma'am.

Q. And did he ever -- after he went to work for Mr. Tatum, did he ever work on the Carla Cox case?

3

A. No, ma'am.

## B. Erlandson's Expectations

Likewise, the majority's entire factual recitation relies on two presumptions: (1) that Erlandson *expected* to work on the Carla Cox case with Piel, and (2) that his expectations were based upon something other than his own wishful thinking. First, Erlandson did not testify that he "expected" to try the Carla Cox murder case with Piel. He testified that he "wanted" to.[1] And even if his desire did rise to the level of expectation, the trial court actively sought and received clarification that any such expectation on Erlandson's part was not reasonable under the circumstances:

> Q. But during that period of time that you were under the understanding that, hey, I'm still going to be working for Mr. Piel on this case, right?
>
> A. Yes, I *wanted* to work with Mr. Piel on the case.

---

[1] The record in this case also included an affidavit by George Roland, brother of Sarah Roland, Cox's attorney, who swore,

> Eric and I were having a casual conversation about work in early 2014. I mentioned that Sarah was working on Carla Cox's case and that I was helping with it. During that conversation Eric informed me that he was and had been assisting Cary Piel in the prosecution of Carla Cox.

Roland did not testify at the hearing, and the trial court was the exclusive judge of the weight to be given his affidavit testimony. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court gave no weight to George Roland's affidavit. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 695 n.6 (Tex. 2015) (orig. proceeding).

Q. And in your --

THE COURT: Okay. Was something said to you in 2014 that made you think that you were still going to be working on the case?

THE WITNESS: No. It was just the general --

THE COURT: Okay.

THE WITNESS: -- I was *wanting* to work on the case.

THE COURT: Okay.

THE WITNESS: And then when all this came about, I wasn't going to work on the case. [Emphasis added.]

Based upon these presumptions, which are—at best—disputed, the majority then holds:

> The proscription likewise extends to Piel because, for purposes of rule 1.9 of the disciplinary rules, *he became "associated" with Erlandson as co-counsel in the prosecution of Relator's murder case while Erlandson was employed with Tatum. See In re CMH Homes, Inc.*, No. 04-13-00050-CV, 2013 WL 2446724, at *5 (Tex. App.—San Antonio June 5, 2013, orig. proceeding) (mem. op.) (granting mandamus requiring trial court to disqualify co-counsel based on violation of rule 1.09(b) because co-counsel "associated" on case with disqualified attorney); *see also* Tex. Disciplinary Rules Prof'l Conduct R. 1.09(b). When Erlandson became a member of Tatum's firm *and when Piel "associated" with Tatum's firm by co-counseling with Erlandson in this very case*, none of them (Tatum, Erlandson, or Piel) could prosecute Relator for murder if any of them practicing alone would be prohibited from doing so by subsection (a) of rule 1.09, and Tatum is so prohibited. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.09(a), (b). [Emphasis added.]

The trial court did not find that there were any substantive conversations about the Cox case between Piel and Erlandson that occurred after Piel and Erlandson left the employ of the Denton County District Attorney's Office. The

5

trial court did not find that in 2014 Erlandson "expected" to work on the Carla Cox case with Piel. The trial court did not find that anything was said to Erlandson that would make him think that he was still working on the Carla Cox case with Piel. Finally, the trial court did not find that Piel and Erlandson ever "co-counseled" on the Cox case.[2] To arrive at the conclusion that "when Erlandson became a member of Tatum's firm *and when Piel 'associated' with Tatum's firm by co-counseling with Erlandson in this very case*, none of them (Tatum, Erlandson, or Piel) could prosecute Relator for murder if any of them practicing alone would be prohibited from doing so by subsection (a) of rule 1.09, and Tatum is so prohibited," the majority must resolve disputed fact issues contrary to the trial court's ruling. [Emphasis added.] The applicable standard of review does not permit this.

The standard of review demands that with respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court—even if we would have ruled differently in the same circumstances—unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)

[2]Erlandson was a law student intern when he worked with Piel in the Denton County District Attorney's office on the cold case. By the time Tatum employed Erlandson as an attorney, more than six months had elapsed since Cox had discharged Tatum as her attorney and hired new counsel.

(orig. proceeding).  In other words, we give deference to a trial court's factual determinations that are supported by evidence.  *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

Upon proper application of the standard of review, this record simply does not support the majority's conclusion that Piel and Erlandson "co-counseled in this very case."  For that reason, I respectfully dissent.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment) joins.

DELIVERED:  November 5, 2015