In re LABATT FOOD SERVICE, L.P., Relator.

No. 07–0419.

Supreme Court of Texas.

Argued Sept. 9, 2008.

Decided Feb. 13, 2009.

Rehearing Denied May 1, 2009.

Robert A. Valadez, Mark A. Giltner, Shelton & Valadez, San Antonio, Nissa M. Dunn, for relator.

Fidel Rodriguez Jr., San Antonio, Leo D. Figueroa, for real party in interest.

Justice JOHNSON delivered the opinion of the Court.

Under Texas law, wrongful death beneficiaries are generally bound by a decedent's pre-death contractual agreement because of the derivative nature of their claims. In this case, we consider whether the arbitration provision in an agreement between a decedent and his employer requires the employee's wrongful death beneficiaries to arbitrate their wrongful death claims against the employer even though they did not sign the agreement. We hold that it does.

## I. Background

Labatt Food Service, L.P. does not provide workers' compensation insurance to cover its employees in the event of on-the-job injuries. Rather, it provides an "occupational injury plan" (the plan) under which its employees may elect to participate. To become participants in the plan, employees sign an agreement entitled "Election of Comprehensive Benefits, Indemnity, and Arbitration Agreement." The agreement contains several numbered paragraphs. Of primary relevance to this proceeding are three of those paragraphs. Paragraph three provides that the employee elects to be covered under the plan "individually and on behalf of heirs and beneficiaries." Paragraph three also provides that the employee will indemnify Labatt from claims and suits based on injury to or death of the employee from occupational causes, except for claims filed pursuant to the plan. Paragraph four consists of an arbitration clause providing that disputes related to either the agreement, the plan, or to an employee's occupational injury or death must be submitted to binding arbitration pursuant to the Federal Arbitration Act (FAA). See 9 U.S.C. §§ 1–16. Paragraph eight provides for the severability of any invalid provision.

Carlos Dancy, Jr., an employee of Labatt, elected to participate in the plan and signed an agreement. Dancy later died from an apparent asthma attack that occurred while he was working. His parents and children filed a wrongful death action against Labatt. Labatt responded by filing a motion to compel arbitration in which it asserted the arbitration agreement bound the wrongful death beneficiaries. The beneficiaries argued they were not bound by Dancy's arbitration agreement for two reasons: (1) they were not signatories to the agreement, and (2) the entire agreement was void because the indemnity clause was a pre-injury waiver in violation of Texas Labor Code section 406.033(e).

The trial court denied Labatt's motion without stating its reasons. The court of appeals denied mandamus relief. Labatt now seeks mandamus relief from this Court.

## II. Are the Beneficiaries Bound to Arbitrate?

### A. Standard of Review

A party denied the right to arbitrate pursuant to an agreement subject to

the FAA does not have an adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion. *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 128 (Tex.1999). Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *Brainard v. State*, 12 S.W.3d 6, 30 (Tex.1999); *see Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). Whether an arbitration agreement is enforceable is subject to de novo review. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003).

### B. Governing Law

■ Under the FAA, whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by courts rather than arbitrators unless the parties clearly and unmistakably provide otherwise. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex.2005); *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). As this arbitration agreement is silent about who is to determine whether particular persons are bound by the agreement, courts, rather than the arbitrator, should determine the issue. *See First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■ We apply Texas procedural rules in determining whether nonsignatories are bound by an arbitration agreement. *In re Weekley Homes*, 180 S.W.3d at 130. It is not entirely clear, however, if state or federal substantive law governs whether nonsignatories are bound to arbitrate under an agreement subject to the FAA. *Id.; see Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 n. 6 (5th Cir.2004). Under the FAA, state law generally governs whether a litigant agreed to arbitrate, and

federal law governs the scope of the arbitration clause. *In re Weekley Homes*, 180 S.W.3d at 130. But whether nonsignatories are bound by an arbitration agreement is a distinct issue that may involve either or both of these matters. *Id.* at 130–31; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex.2005) (noting whether nonsignatory plaintiffs should be compelled to arbitrate their claims is related to validity but is also a distinct issue). The FAA does not specify whether state or federal law governs, and the United States Supreme Court has not directly addressed the issue. *In re Weekley Homes*, 180 S.W.3d at 130. Pending an answer from the United States Supreme Court, we have determined to apply state substantive law and endeavor to keep it consistent with federal law. *Id.* We keep in mind that a purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *see Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1074 n. 5 (5th Cir.2002).

Mindful of the foregoing, we move to the issue before us—whether an arbitration agreement governed by the FAA binds the nonsignatory wrongful death beneficiaries of a party to the agreement.

### C. Beneficiaries as Nonsignatories

■ We have previously determined that nonsignatories to an agreement subject to the FAA may be bound to an arbitration clause when rules of law or equity would bind them to the contract generally. *In re Weekley Homes*, 180 S.W.3d at 131 (noting that if state law would bind a nonparty to a contract generally, the FAA appears to preempt an exception for arbitration clauses because the FAA requires states to place arbitration

contracts on equal footing with other contracts); *see also Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (2005) (noting that a state "may not ... decide that a contract is fair enough to enforce all its basic terms ... [yet] not fair enough to enforce its arbitration clause"). Therefore, we look to whether the agreement signed by Dancy would generally bind his beneficiaries under Texas law.

Several rules of law and equity may bind nonsignatories to a contract. For example, we have held that the principles of equitable estoppel and agency may bind nonsignatories to an arbitration agreement. *In re Weekley Homes,* 180 S.W.3d at 131–35; *see also In re Kellogg Brown & Root,* 166 S.W.3d at 739 (noting nonsignatories may be bound to arbitration agreement under "direct benefits estoppel"); *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 191–95 (Tex.2007) (recognizing estoppel may bind a nonsignatory to an arbitration agreement but holding plaintiffs were not bound to arbitration agreement under "concerted misconduct estoppel" because it was not a recognized theory of estoppel under Texas law); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 755–56 (Tex.2001) (holding a nonsignatory who sues based on a contract subjects himself to the contract's terms, including its arbitration agreement).

Labatt argues that under these circumstances the beneficiaries should be bound by the agreement because (1) they are third party beneficiaries of the agreement; (2) they are bound by the agreement because of the derivative nature of their claims; and (3) Texas Family Code section 151.001 afforded Dancy the legal authority to bind his minor children to the agreement. Because we determine it is dispositive, we first consider Labatt's argument that the beneficiaries are bound to arbitrate due to the derivative nature of their claims.

At common law there was no recognized cause of action for the wrongful death of another person. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 344 (Tex. 1992). The Legislature enacted the Wrongful Death Act in order to create a cause of action to allow a deceased tort victim's surviving parents, children, and spouse to recover damages for their losses from the victim's death. *Shepherd v. Ledford,* 962 S.W.2d 28, 31 (Tex.1998); *see* Tex. Civ. Prac. & Rem.Code §§ 71.002–.004. Under the Wrongful Death Act as it applies here, wrongful death beneficiaries may pursue a cause of action "only if the individual injured would have been entitled to bring an action for the injury if the individual had lived." Tex. Civ. Prac. & Rem.Code § 71.003(a). This language is not a recent innovation but is a recodification of language which has consistently been part of the Wrongful Death Act. *See Russell,* 841 S.W.2d at 346. And we have consistently held that the right of statutory beneficiaries to maintain a wrongful death action is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death. *See id.* at 345–47. Thus, it is well established that statutory wrongful death beneficiaries' claims place them in the exact "legal shoes" of the decedent, and they are subject to the same defenses to which the decedent's claims would have been subject. *Id.* at 347.

Accordingly, we long ago held that a decedent's pre-death contract may limit or totally bar a subsequent action by his wrongful death beneficiaries. *See Sullivan–Sanford Lumber Co. v. Watson,* 106 Tex. 4, 155 S.W. 179, 180 (1913); *Thompson v. Fort Worth & R.G. Ry. Co.,* 97 Tex. 590, 80 S.W. 990, 992 (1904); *see also Russell,* 841 S.W.2d at 347 (affirming hold-

ings in *Thompson* and *Sullivan–Sanford Lumber Co.*). In *Thompson,* R.K. Thompson sued to recover damages for injuries he suffered while riding a train. He accepted a settlement offer and executed a full release of the railway company. 80 S.W. at 990. Shortly after signing the release, Thompson died from his injuries. *Id.* at 991. His wife and children then sued the railway company seeking to recover damages for his death. *Id.* at 990. The Court noted that if Thompson had survived, he would not have been entitled to bring suit because of the contractual release and because the Wrongful Death Act provided, in language similar to the current Act, that beneficiaries were only entitled to bring suit if the decedent would have been entitled to maintain an action for the injury. *Id.* at 991–92. The Court held that although the beneficiaries were not parties to the release, the contractual release signed by Thompson barred their wrongful death claims because they stood in the same legal shoes as Thompson and were subject to the same contractual defenses. *Id.* at 992.

In *Sullivan–Sanford Lumber Co.,* the Court again held that a pre-death contractual release signed by a decedent barred a subsequent action by his wrongful death beneficiaries. 155 S.W. at 180. The Sullivan–Sanford Lumber Company allowed non-employees to ride their trains without charge but issued them boarding passes containing the following language:

> The user of this pass rides only on the following conditions: (1) This permit is accepted with the understanding that the person using it assumes all risk of injury of any character while using the same and hereby waives any claim for damages in case of injury....

135 S.W. 635, 636 (Tex.Civ.App.-Texarkana 1911), *rev'd,* 106 Tex. 4, 155 S.W. 179 (1913). J.A. Watson was riding a train courtesy of a boarding pass when the train collided with another train killing Watson. *Id.* His wife and children sued the Lumber Company. *Id.* The Court held, as it did in *Thompson,* that the beneficiaries were not entitled to recover under the Wrongful Death Act because Watson himself could not have recovered for his injuries if he had survived, and his wrongful death beneficiaries were subject to the same contractual defenses that Watson would have been subject to had he sued. 155 S.W. at 180.

Consistent with our holdings in *Thompson* and *Watson,* many courts of appeals have held that a decedent's pre-death contract may limit or bar a subsequent wrongful death action. *See Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 719 (Tex. App.-San Antonio 1994, writ denied) (pre-injury liability release signed by decedent before taking scuba diving lessons barred subsequent wrongful death and survival action against scuba instructor); *Winkler v. Kirkwood Atrium Office Park,* 816 S.W.2d 111, 115 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (release executed by decedent before joining health club precluded his beneficiaries from bringing wrongful death and survival action); *McClellan v. Boehmer,* 700 S.W.2d 687, 690 (Tex.App.-Corpus Christi 1985, no writ) (release and settlement signed by automobile accident victim barred survival and wrongful death actions after victim died from injuries sustained in accident).

■ Despite this line of authority, the wrongful death beneficiaries argue that agreements to arbitrate are different than other contracts, and they should not be bound by Dancy's agreement. We reject their argument. If we agreed with them, then wrongful death beneficiaries in Texas would be bound by a decedent's contractual agreement that completely disposes of the beneficiaries' claims, but they would not be bound by a contractual agreement that merely changes the forum in which

the claims are to be resolved. Not only would this be an anomalous result, we believe it would violate the FAA's express requirement that states place arbitration contracts on equal footing with other contracts. 9 U.S.C. § 2; *see Volt Info. Scs., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

■■■ The beneficiaries also argue that they should not be bound because Dancy did not have the authority to bind them to the arbitration agreement when the wrongful death cause of action actually belongs to the surviving spouse, children, and parents of the deceased. While it is true that damages for a wrongful death action are for the exclusive benefit of the beneficiaries and are meant to compensate them for their own personal loss, the cause of action is still entirely derivative of the decedent's rights. TEX. CIV. PRAC. & REM. CODE §§ 71.003(a), .004(a); *Russell*, 841 S.W.2d at 347. Thus, regardless of the fact that Dancy's beneficiaries are seeking compensation for their own personal loss, they still stand in Dancy's legal shoes and are bound by his agreement.

In the alternative, the beneficiaries urge us to circumvent the derivative claim rule by holding that wrongful death actions are analogous to and should be treated similarly to loss of consortium claims. A tort action seeking damages for loss of consortium, however, is fundamentally different than a statutory wrongful death action. If Dancy had suffered a severe but nonfatal injury, his children would have been entitled to bring a claim to recover for the loss of care, guidance, love, and protection ordinarily provided by their father.[1] *Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex.1990). Their lost consortium claims would be derivative in the sense that the beneficiaries would be required to establish Labatt was

liable for their father's underlying injury in order to recover damages. *Whittlesey v. Miller*, 572 S.W.2d 665, 668 (Tex.1978). But loss of consortium claims are not entirely derivative as are wrongful death claims; instead, they are separate and independent claims distinct from the underlying action. *Id.* at 667, 669. Thus, a settlement agreement signed by an injured spouse does not bar a subsequent loss of consortium claim by the non-injured spouse. *Id.* at 669.

A wrongful death action is different than a loss of consortium claim because the Wrongful Death Act expressly conditions the beneficiaries' claims on the decedent's right to maintain suit for his injuries. TEX. CIV. PRAC. & REM.CODE § 71.003(a); *see Russell*, 841 S.W.2d at 346. The Legislature created an entirely derivative cause of action when it enacted the Wrongful Death Act, and Dancy's beneficiaries are bringing an entirely derivative claim. Their wrongful death action is not in the same category as a loss of consortium claim for purposes of derivative status analysis. We decline their invitation to circumvent the clear language of the Wrongful Death Act.

In addition, other states have resolved this issue based on whether the wrongful death action is an independent or derivative cause of action under state law. *See Cleveland v. Mann*, 942 So.2d 108, 118–19 (Miss.2006) (beneficiaries bound by decedent's arbitration agreement because under Mississippi Wrongful Death Act, beneficiaries may bring suit only if decedent would have been entitled to bring action immediately before death); *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661, 665 (Ala.2004) (administrator of estate bringing wrongful death claim bound because administrator stands in legal shoes of decedent); *Ballard v. Sw. Detroit*

---

1. Dancy's parents would not have been entitled to recover lost consortium damages had

he survived his injuries. *See Roberts v. Williamson*, 111 S.W.3d 113, 119 (Tex.2003).

*Hosp.,* 119 Mich.App. 814, 327 N.W.2d 370, 372 (1982) (administrator bringing wrongful death action bound by arbitration agreement because wrongful death is a derivative cause of action under Michigan law); *but see Bybee v. Abdulla,* 189 P.3d 40, 43 (Utah 2008) (beneficiaries not bound because wrongful death is an independent cause of action under Utah law); *Finney v. Nat'l Healthcare Corp.,* 193 S.W.3d 393, 395 (Mo.Ct.App.2006) (beneficiary not bound because under Missouri law the wrongful death act creates a new cause of action belonging to the beneficiaries). Other states, however, resolve the issue based on what the contracting parties intended. *Allen v. Pacheco,* 71 P.3d 375, 379–80 (Colo.2003) (beneficiaries bound when contract reflects intent of the parties to bind beneficiaries); *Herbert v. Superior Court,* 169 Cal.App.3d 718, 215 Cal.Rptr. 477, 480 (1985) (beneficiaries bound when contract reflects intent of the parties to bind beneficiaries).

A review of the cases decided based on statutory language indicates that courts in states where wrongful death actions are recognized as independent and separate causes of action are more likely to hold that the beneficiaries are not bound by a decedent's agreement to arbitrate, *see, e.g., Bybee,* 189 P.3d at 46–47; *Finney,* 193 S.W.3d at 395, while beneficiaries in states where wrongful death actions are wholly derivative in nature are generally held to be bound by a decedent's arbitration agreement. *See Cleveland,* 942 So.2d at 118–19; *Ballard,* 327 N.W.2d at 372; *Bybee,* 189 P.3d at 46 ("Courts that compel nonsignatory heirs to abide by arbitration agreements often do so because under their law a wrongful death cause of action is wholly derivative of and dependent on the underlying personal injury claim."). Our holding is consistent with those in the majority of states that have statutes similar to the Texas statute and have considered the issue.

Some Texas courts of appeals have held that wrongful death beneficiaries are not bound by a decedent's agreement to arbitrate. *See In re Kepka,* 178 S.W.3d 279, 288 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding [mand. dismissed]); *Gomez v. Zardenetta,* No. 04–97–0019–CV, 1998 WL 19858, at *7 (Tex.App.-San Antonio Jan.21, 1998, no pet.) (not designated for publication). To the extent the holdings of courts of appeals conflict with our decision, we disapprove of them.

### III. The Indemnity Clause

■ The Labor Code provides that an employee's cause of action against a nonsubscriber employer to recover damages for personal injuries or death sustained in the course and scope of employment

> may not be waived by an employee before the employee's injury or death. Any agreement by an employee to waive [such] a cause of action ... before the employee's injury or death is void and unenforceable.

TEX. LAB.CODE § 406.033(e). The beneficiaries challenge the validity of the entire agreement on the basis that the indemnification clause in paragraph three is in substance a pre-injury waiver that violates Labor Code section 406.033(e). They, however, specify that their challenge to the agreement's validity "is not dependent on or directed solely to the arbitration provision." Instead, they argue that the contract as a whole, including its arbitration clause, is rendered invalid by the allegedly illegal indemnity clause because the clause is not severable.

■ There are two types of challenges to an arbitration provision: (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of

the contract's provisions is illegal and renders the whole contract invalid. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). A court may determine the first type of challenge, but a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator. *Id.* at 448–49, 126 S.Ct. 1204; *see Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801 (claim of fraud in the inducement of arbitration clause itself may be adjudicated by court, but court may not consider claim of fraud in the inducement of the contract generally); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) ("[T]he party opposing arbitration must show that the fraud relates to the arbitration clause specifically, not to the broader contract in which it appears."); *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex.2008) ("[A]rbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause."); *In re Merrill Lynch*, 235 S.W.3d at 190 & n. 12 (noting that a defense relating to the parties' entire contract rather than the arbitration clause alone is a question for the arbitrators); *In re FirstMerit Bank*, 52 S.W.3d at 756 (noting that the defenses of unconscionability, duress, fraudulent inducement, and revocation must specifically relate to the arbitration part of a contract and not the contract as a whole if they are to defeat arbitration, and that validity of an arbitration provision is a separate issue from validity of the whole contract).

We recently considered the first type of challenge in *In re Poly–America, L.P.*, 262 S.W.3d 337 (Tex.2008). There, Johnny Luna and his employer, Poly–America, entered into a five-page-long arbitration agreement. *Id.* at 345, 360. After Luna was fired, he sued for retaliatory discharge and sought a declaratory judgment that the arbitration agreement was unenforceable because it contained provisions that violated public policy and were unconscionable. *Id.* at 345. One of his arguments was that provisions prohibiting the arbitrator from awarding punitive damages or ordering reinstatement violated Labor Code provisions authorizing such relief. *Id.* at 352. We determined that those provisions were unconscionable and void, but they were severable and did not invalidate the rest of the agreement to arbitrate. *Id.* at 359–60. We stated that "where a particular waiver of substantive remedies or other provision of a contract is unconscionable—independent of the agreement to arbitrate—it will be unenforceable even though included in an agreement to arbitrate." *Id.* at 349. But that statement must be read in context of the case as it was presented to us. We were considering only provisions that were part of the arbitration agreement. There was no challenge to an invalid or illegal provision outside of the arbitration agreement because the entire contract at issue was an arbitration agreement. Because we were considering the various challenged provisions only as they were part of the arbitration agreement itself, the Court could properly adjudicate Luna's challenge. *Buckeye*, 546 U.S. at 444, 126 S.Ct. 1204; *Prima Paint*, 388 U.S. at 409, 87 S.Ct. 1801. At oral argument in this case, Labatt urged the Court to similarly sever the indemnity clause if we found it violated Labor Code section 406.033(e). But as we explain below, we do not reach the issue of whether the indemnity clause is void because it is a question for the arbitrator.

The case now before us presents a challenge of the second type that we refer to above: a broad challenge to the entire contract on the ground that one of the contract's provisions is illegal and renders the whole contract invalid, but not specifically challenging the arbitration clause. The Supreme Court addressed a similar challenge in *Buckeye*, 546 U.S. 440, 126

S.Ct. 1204, 163 L.Ed.2d 1038. There, Buckeye Check Cashing operated a deferred deposit service by which its customers obtained cash in exchange for the customer's check in the amount received plus a finance charge. *Id.* at 442, 126 S.Ct. 1204. For each transaction, Buckeye's customers signed a "Deferred Deposit and Disclosure Agreement," which included an arbitration clause. *Id.* Buckeye customers brought a class action suit in Florida state court. *Id.* at 443, 126 S.Ct. 1204. They alleged the finance charges in the agreement violated Florida lending and consumer protection laws. *Id.* Buckeye moved to compel arbitration, but the plaintiffs argued the contract as a whole, including the arbitration clause, was rendered invalid by the usurious finance charges. *Id.* The trial court denied the motion to compel, holding that the court rather than an arbitrator should resolve the claim that a contract is void and illegal. *Id.* The Florida Supreme Court affirmed, but the United States Supreme Court reversed. *Id.* at 449, 126 S.Ct. 1204. The United States Supreme Court held that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.*

Like the plaintiffs in *Buckeye,* the beneficiaries in this case challenge the contract on the ground that an illegal clause renders the whole contract void. The beneficiaries challenge the arbitration clause only in the sense that they also challenge all parts of the agreement because the parts comprise the whole. But, unless a challenge is to the arbitration clause or arbitration agreement itself, as it was in *In re Poly-America,* the question of a contract's validity is for the arbitrator and not the courts. Accordingly, the beneficiaries' challenge to the validity of the agreement must be determined by the arbitrator, and we do not address it. *Buckeye,* 546 U.S. at 445–46, 126 S.Ct. 1204; *In re Merrill Lynch,* 235 S.W.3d at 190 & n. 12; *In re FirstMerit Bank,* 52 S.W.3d at 756, 758.

Because of our disposition of the case, we do not address Labatt's alternative argument that the FAA preempts Labor Code section 406.033(e) to the extent the state statute would prevent or restrict enforcement of the arbitration provision. *See In re Bison Bldg. Materials, Ltd.,* Nos. 01–07–00003–CV, 01–07–00029–CV, 2008 WL 2548568, at *8 (Tex.App.-Houston [1st Dist.] June 26, 2008, orig. proceeding) (mem.op.); *In re Border Steel, Inc.,* 229 S.W.3d 825, 831–32 (Tex.App.-El Paso 2007, orig. proceeding); *In re R & R Pers. Specialists of Tyler, Inc.,* 146 S.W.3d 699, 703–04 (Tex.App.-Tyler 2004, orig. proceeding).

## IV.  Conclusion

If Dancy had sued Labatt for his own injuries immediately prior to his death, he would have been compelled to arbitrate his claims pursuant to his agreement. His beneficiaries, therefore, must arbitrate as their right to maintain a wrongful death action is entirely derivative of Dancy's rights. The trial court clearly abused its discretion by refusing to compel arbitration.

We conditionally grant Labatt's petition for writ of mandamus. The trial court is directed to enter an order compelling arbitration of the beneficiaries' claims. We are confident the trial court will comply, and the writ will issue only if it fails to do so.