# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00437-CV

Lincoln Financial Advisors Corporation, Appellant

v.

Bridgette Ards, acting as next friend of her daughter, Gabrielle Ards, Appellee

FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
NO. C-1-PB-18-000269, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Lincoln Financial Advisors Corporation (LFA) appeals from the probate court's order denying LFA's motion to compel arbitration. In the underlying proceeding, Bridgette Ards, acting as next friend of her daughter, Gabrielle Ards, sued LFA; Brenda Ards, who was the successor trustee of the Gabrielle Ards Trust; and Carl B. Ards, III, who was the former trustee of the Gabrielle Ards Trust. Bridgette sought to hold Carl, Brenda, and LFA jointly and severally liable for alleged misconduct that materially depleted the value of the trust estate.[1] On appeal, LFA contends that the probate court committed reversible error by denying its motion to compel arbitration because Bridgette and Gabrielle, although not signatories, are bound by

---

[1] Because many of the parties in the underlying proceeding have the same last name, we refer to them by their first names. Although they are parties in the underlying proceeding, Brenda and Carl are not parties to this interlocutory appeal.

arbitration clauses in LFA's account agreements with Carl and Brenda. For the reasons that follow, we affirm the probate court's order denying LFA's motion to compel arbitration.

**Background**

Carl B. Ards, Jr. (Decedent) died on June 27, 2008. In his will, he created a trust; designated his granddaughter Gabrielle, who is a minor, as the beneficiary of the trust; and his son Carl served as the original trustee. Carl opened an investment account at LFA in the name of "Carl B. Ards III, TTEE Gabrielle Ards Trust U/W 6/27/08." Related to this account, Carl signed a "Brokerage Basic Account Application" that bound him to the "Brokerage Basic Account Customer Agreement." In the application, he listed himself in his individual name as the account holder, did not list any beneficiaries or other account holders, and crossed out information about Gabrielle that he had handwritten in the section of the application tilted "additional account holders."

The agreement between Carl and LFA contains the following relevant clauses concerning arbitration:

Resolving Disputes—Arbitration

This agreement contains a pre-dispute arbitration clause. Under this clause, which becomes binding on all parties when you sign your account application, you, we, and NFS[2] agree as follows:

A.    All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed. . . .

---

[2] In the "Brokerage Basic Account Agreement," "NFS" stands for National Financial Services LLC, a NYSE member that provides custody and clearing services for LFA and its customers.

2

All controversies that may arise between you, us and NFS concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction or the continuation, performance, interpretation or breach of this or any other agreement between you, us and NFS, whether entered into or arising before, on or after the date this account is opened) shall be determined by arbitration in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any securities self-regulatory organization or securities exchange of which the person, entity or entities against whom the claim is made is a member, as you may designate.

Brenda, the Decedent's wife, subsequently replaced Carl as the trustee of the Gabrielle Ards Trust, and on January 6, 2017, she signed a "Client Profile," acknowledging the pre-dispute arbitration clause. The Client Profile stated that it applied "to all accounts established in conjunction with this Client Profile" at LFA and specified in relevant part:

(1)     All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

. . .

It is agreed that any controversy arising out of or relating to the accounts established herewith, shall be submitted to arbitration in accordance with the rules adopted by the Financial Industry Regulatory Authority, Inc. Dispute Resolution Board.

In the Client Profile, Brenda listed herself in her individual name as the account holder and the name of the account as "Gabrielle Ards Trust."

In February 2018, Bridgette, acting as next friend of Gabrielle, sued Carl, Brenda, and LFA, alleging in part that, "[t]hrough numerous breaches of fiduciary duty, self-dealing and misapplication of fiduciary funds [Carl] materially depleted the value of the trust estate of the Gabrielle Ards Trust"; LFA "had actual knowledge of Carl's breaches of fiduciary duty, self dealing,

and misapplication of fiduciary funds"; and "[LFA was] therefore jointly and severally liable with Carl."[3] Bridgette asserted that Gabrielle was the designated beneficiary of the trust and that Bridgette was proceeding "derivatively on behalf of the trustee of the Gabrielle Ards Trust because such trustee [Brenda] cannot sue herself." Bridgette's factual allegations included that: (i) "Carl initially invested most, if not all, of the trust estate of the Gabrielle Ards Trust with [LFA] who knew they were investing fiduciary funds because the account was titled 'Carl B. Ards III, TTEE Gabrielle Ards Trust U/W 6/27/08'"; (ii) "[LFA] knowingly participated in Carl's breaches of fiduciary duty"; and (iii) "[LFA] failed to insure that the fiduciary funds that it was administering were not being improperly withdrawn." Bridgette pleaded for "derivative damages" based on her "derivative capacity on behalf of the trustee of the Gabrielle Ards Trust against defendants," including "an amount equal to all compensation taken by any Defendant for serving as trustee or investment advisor of the Gabrielle Ards Trust since its inception" and "an amount equal to all profit made by any Defendant through or arising out of the administration of the Gabrielle Ards Trust."

LFA answered and filed a motion to compel arbitration under the Federal Arbitration Act (FAA), contending that Bridgette was bound to arbitrate her claims based on the arbitration clauses in LFA's account agreements with Brenda and Carl. *See* 9 U.S.C. § 2 (addressing agreements to arbitrate arising out of "transaction involving commerce"). Following a hearing, the probate court denied the motion to compel and stayed the proceeding pending any interlocutory appeal that LFA elected to file. This appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.016

---

[3] Bridgette, acting as next friend of Gabrielle, also sought to remove Brenda as the trustee, to compel an accounting by Brenda, to examine the books and records of the trust, and to recover attorney's fees and costs.

4

(authorizing interlocutory appeal under same circumstances that appeal from federal district court's order would be permitted under FAA).

**Analysis**

In three issues on appeal, LFA contends that the probate court committed reversible error by denying LFA's motion to compel arbitration because Bridgette and Gabrielle, although not signatories to the account agreements, were bound by the arbitration clauses in those agreements under theories of third party beneficiary, estoppel, and agency. LFA also argues that Bridgette is bound by the arbitration clauses because she seeks to proceed derivatively on behalf of the trust and her claims against LFA arise out of or relate to the funds in the trust account at LFA.

**Standard of Review and Applicable Law**

We review an order denying a motion to compel arbitration for abuse of discretion. *See D.R. Horton-Emerald, Ltd. v. Mitchell*, No. 01-17-00426-CV, 2018 Tex. App. LEXIS 731, at *5–6 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, no pet.) (mem. op.); *Santander Consumer USA, Inc. v. Mata*, No. 03-14-00782-CV, 2017 Tex. App. LEXIS 2631, at *3 (Tex. App.—Austin Mar. 29, 2017, no pet.) (mem. op.). "Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations de novo." *Mitchell*, 2018 Tex. App. LEXIS 731, at *6 (quoting *Rocha v. Marks Transp., Inc.*, 512 S.W.3d 529, 535 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding))). Further, whether a non-signatory is bound to an arbitration agreement is a gateway matter that is reviewed de novo. *See Jody James*

5

*Farms, J.V. v. Altman Grp.*, 547 S.W.3d 624, 629 (Tex. 2018); *Labatt Food Serv.*, 279 S.W.3d at 643; *Cardon Healthcare Network, Inc. v. Goldberg*, No. 03-17-00474-CV, 2018 Tex. App. LEXIS 1639, at *2 (Tex. App.—Austin Mar. 2, 2018, no pet.) (mem. op.).

The parties do not dispute that the FAA governs the arbitration clauses at issue. *See* 9 U.S.C. §§ 1–16; *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex. 1992) (stating that FAA "applies to all suits in state and federal court when the dispute concerns a 'contract evidencing a transaction involving commerce'"); *see, e.g.*, *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding) (applying FAA to account agreement between brokerage firm and its customer); *In re Raymond James & Assocs.*, 196 S.W.3d 311, 321 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (concluding that FAA applied because parties agreed to arbitrate under FAA in account agreements and complaints "involve the sale of securities, and therefore involve interstate commerce").[4]

In general, a party seeking to compel arbitration under the FAA has the burden to show the existence of a valid agreement to arbitrate and a dispute within the agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Id.* at 738. "Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* (quoting *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford*

---

[4] The Texas Supreme Court has observed "that it is important for federal and state law to be as consistent as possible in this area, because federal and state courts have concurrent jurisdiction to enforce the FAA." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (resting decision on state law but explaining that decision is also "informed by persuasive and well-reasoned federal precedent"). Consistent with the Texas Supreme Court's directive, we rest our decision on state law but also are informed by federal precedent.

*Junior Univ.*, 489 U.S. 468, 478–79 (1989)). The presumption in favor of arbitration under the FAA "arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists," *id.* at 737–38 (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)), "because 'the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so,'" *id.* (quoting *Bridas S.A.P.I.C. v. Government of Turkm.*, 345 F.3d 347, 354 n.4 (5th Cir. 2003)); *see Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied) (explaining that presumption in favor of arbitration "does not apply to the existence of such an agreement or to the identity of the parties who may be bound to such an agreement" and that "policy favoring arbitration cannot justify requiring litigants to forego a judicial remedy when they have not agreed to do so").

In this case, LFA seeks to compel arbitration based on account agreements that Bridgette and Gabrielle did not sign. "[U]nder certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement." *Kellogg Brown & Root*, 166 S.W.3d at 738; *see In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding) ("An obligation to arbitrate not only attaches to one who has personally signed the written arbitration agreement but may also bind a non-signatory under principles of contract law and agency."). Relevant to this appeal, courts may require non-signatories to arbitrate their claims under theories of agency, equitable estoppel, and third party beneficiary, *see Jody James Farms*, 547 S.W.3d at 633; *Kellogg Brown & Root*, 166 S.W.3d at 739,[5] or "because of the derivative nature of their claims," *Labatt Food Serv.*, 279 S.W.3d at 644.

---

[5] Although not relevant here, other theories that may bind non-signatories to arbitration agreements are incorporation by reference, assumption, and alter ego. *Kellogg Brown & Root*, 166 S.W.3d at 739.

Guided by the Texas Supreme Court's directives and the applicable standard of review, we address the theories raised by LFA, beginning with the theory of third party beneficiary.

**Third Party Beneficiary**

"A third party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *In re Palm Harbor, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding) (citing *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)); *see First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (explaining that "person seeking to establish third-party-beneficiary status must demonstrate that contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit'" (quoting *Stine*, 80 S.W.3d at 589)). In this case, LFA argues the converse scenario of a non-signatory seeking to enforce the terms of a contract against signatories—LFA seeks to bind Bridgette and Gabrielle, who are not signatories to the account agreements, to the agreements between Carl, Brenda, and LFA. LFA argues that the "Will and the Account Agreements, read together, 'clearly and fully express an intent to confer a direct benefit' on Gabrielle" and that Gabrielle's status as the beneficiary of the trust binds her to the arbitration clauses in the account agreements. As support for the latter argument, LFA cites Bridgette's asserted basis for standing as an "interested person" under the Texas Trust Code. *See* Tex. Prop. Code § 111.004(7) (defining "interested person" to mean "trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust").

The Texas Supreme Court, however, has made clear that the analysis of "[w]ho is bound to an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's

8

terms." *Jody James Farms*, 547 S.W.3d at 633; *see Brumitt*, 519 S.W.3d at 102, 110 (explaining that generally "a person's status as a third-party beneficiary depends solely on the contracting parties' intent" and holding that trial court erred by permitting jury to consider extrinsic evidence as basis for adding term to parties' contract that parties intended third party beneficiary). "Specifically, a person seeking to establish third-party-beneficiary status must demonstrate that the contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit.'" *Brumitt*, 519 S.W.3d at 102 (quoting *Stine*, 80 S.W.3d at 589). "To determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, courts must look solely to the contract's language, construed as a whole." *Id.* "The contract must include 'a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to create a third-party beneficiary is insufficient." *Id.* (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)); *see Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 566 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (explaining that "intent to contract or confer a direct benefit to a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied'" (quoting *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999))).

We further observe that "there is a presumption against, not in favor of, third-party beneficiary agreements." *MCI Telecomms. Corp.*, 995 S.W.2d at 652. It is not enough that the third party would benefit from the parties' performance. *Brumitt*, 519 S.W.3d 95 at 102. "To create a third-party beneficiary, the contracting parties must have intended to grant the third party the right to be a 'claimant' in the event of a breach." *Id.* (quoting *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 505 (Tex. 1975)).

9

Here there is no express reference in the respective customer account agreements between LFA, Brenda, and Carl—the parties to the agreements—that they intended the agreements to be for the direct benefit of Gabrielle. *See id.* at 103 (explaining that "'controlling factor is the absence of any sufficiently clear and unequivocal language demonstrating' the necessary intent" to directly benefit third party (quoting *Tawes*, 340 S.W.3d at 428)). On their face, the account agreements were for the benefit of LFA and the account holders, Carl and Brenda. *See id.*; *see also Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1076 (5th Cir. 2002) (noting that "contract does not mention the Gaskamp children at all and [that] there is no indication in the contract that it is designed to benefit anyone other than the Gaskamp parents, who purchased the home"); *Goldberg,* 2018 Tex. App. LEXIS 1639, at *7–8 (concluding that there was no allegation that underlying provider agreement between hospital and insurer that contained arbitration clause was made for plaintiff's benefit); *In re SSP Partners*, 241 S.W.3d 162, 169 (Tex. App.—Corpus Christi-Edinburg 2007, orig. proceeding) ("There is no provision in the agreement stating that Garcia, on behalf of her children, was agreeing to submit the children's claims to arbitration.").

To support its position, LFA relies on the creation of the trust in the will for Gabrielle's benefit, Carl's opening of the account at LFA in the name of "Carl B. Ards III, TTEE Gabrielle Ards Trust U/W 6/27/08," and Brenda's naming the "Gabrielle Ards Trust" as the account's title in the "Client Profile" that she signed. The terms of the will, however, do not factor into whether LFA, Brenda, and Carl intended to make Gabrielle a third party beneficiary of the account agreements. *See Brumitt*, 519 S.W.3d at 102–03.

10

Further, although the trustee's use of the trust name in naming the account at LFA may have put LFA on notice that it was holding trust assets, the account name is not "'clear and unequivocal language demonstrating' the necessary intent." *See id.* at 103. The fact that trust assets of the Gabrielle Ards Trust were being held in an LFA account does not lead to the conclusion that the account agreements between the trustees, who were the account holders, and LFA were entered into for Gabrielle's direct benefit. *See id.* (beginning analysis with presumption that parties contract solely for themselves and that "only a clear expression of the intent to create a third-party beneficiary can overcome that presumption"); *see also Bridas*, 345 F.3d at 362 (explaining that, under third-party beneficiary doctrine, courts look to parties' intentions when contract was executed and presume parties are contracting for themselves only, and that "presumption may be overcome only if the intent to make someone a third-party beneficiary is 'clearly written or evidenced in the contract'" (quoting *Gaskamp*, 280 F.3d at 1075–76)). Reference to a trust's name is not reference to its beneficiary. *See* Tex. Prop. Code §§ 111.004 (defining "beneficiary," "trustee," and "trust property"), 112.001 (listing methods for creating trusts), 112.008 (addressing trustee's capacity). Moreover, the claims that Bridgette, acting as next friend of Gabrielle, has asserted against LFA are not premised upon the account agreements and do not otherwise seek to enforce the terms of those agreements. *See Bridas*, 345 F.3d at 363 (stating that court was reluctant to bind non-signatory to terms of agreement based on theory of third party beneficiary "because the [non-signatory] has never filed a claim against Bridas premised upon the agreement, or otherwise sought to enforce its terms").

As further support for its position, LFA cites *Ameriprise Financial Services, Inc. v. Farias*, No. 13-13-00279-CV, 2013 Tex. App. LEXIS 14204, at *8–10 (Tex. App.—Corpus

11

Christi—Edinburg Nov. 21, 2013, pet. denied) (mem. op.), and *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 879 (Tex. App.—Waco 1992, writ denied). We find both cases factually distinguishable.

      (i)      *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*

In *Eddings*, a bank sued the trustee, Merrill Lynch, and others, alleging that the bank held a security interest in certain shares previously held in a trust account at Merrill Lynch and that Merrill Lynch converted the shares by liquidating them. 838 S.W.2d at 876. Merrill Lynch then filed a third party action against the settlor of the trust seeking indemnity or imposition of a constructive trust against the settlor. The settlor, joined by his daughters who were the beneficiaries of the trust, filed claims against Merrill Lynch and a third party claim against an employee of Merrill Lynch. *Id.* After Merrill Lynch filed a motion to compel arbitration that was based on an account agreement that was signed by the trustee, the settlor abandoned his claims against Merrill Lynch and its employee, but the daughters maintained those claims "as beneficiaries of the trust." *Id.*

Based on its examination of the pleadings, the Waco Court of Appeals concluded that "the account agreement [was] the underlying basis for all of the claims" and that the settlor and beneficiaries "would have no claims had the account agreement never been signed by the trustee." *Id.* Our sister court then held "that the settlor and beneficiaries of a trust are bound by a clause in an account agreement to arbitrate the claims arising out of transactions in the trust's account." *Id.* Although the court did not elaborate on the nature of the daughter's claims, they were made in the context of the bank's suit against Merrill Lynch for the liquidation of shares held in the account. *Id.* at 876. In contrast, the claims of Bridgette, acting as next friend of Gabrielle, are asserted against

12

the trustees and LFA jointly and severally and exist independently of the account agreements between the trustees and LFA.

Further, to the extent the holding in *Eddings* stands for the proposition that a trust beneficiary is bound to arbitrate her claims against a financial institution on the sole basis that a trustee agreed to an arbitration clause in an account agreement, we decline to follow its analysis in the context of this case. *See*, *e.g.*, *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding) (explaining that "[c]laims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it," but that, "[o]n the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law").

(ii)    *Ameriprise Financial Services, Inc. v. Farias*

In *Farias*, the Corpus Christi–Edinburg Court of Appeals concluded that non-signatory beneficiaries of a trust were bound to arbitrate their claims against Ameriprise, including claims asserting breach of fiduciary duty, based on account agreements that contained arbitration clauses that had been signed by the trustee, who was the beneficiaries' father. 2013 Tex. App. LEXIS 14204, at *4, 8–10. Focusing on the language of the trust decrees, our sister court concluded that the daughters were third party beneficiaries of the account agreements because the "uncontroverted evidence" established that "the parties clearly and fully spelled out the intent to confer a direct benefit on the [the daughters] by opening the accounts at Ameriprise." *Id.* A district court had entered the trust decrees "for the sole benefit" of the daughters and expressly directed the trustee to place the trust funds with Ameriprise for investment purposes. *See id*. at *1, 8–9; *see also*

Tex. Prop. Code § 142.005 (addressing creation of trust for property recovered in suit by next friend or guardian ad litem). The daughters also were specifically identified as the "primary account holders" in the account agreements that contained the arbitration clauses. *Farias*, 2013 Tex. App. LEXIS 14204, at *11; *see id.* at *1–2 (reciting that trustee signed account agreements pursuant to authority under trust decree and "in connection with the opening of accounts for [his daughters]"). In contrast to the "uncontroverted" evidence before our sister court, here Carl and Brenda listed themselves as the account holders in their individual names and did not list Gabrielle as a beneficiary of the account in the documents that they signed. In particular, Carl on his application crossed out the inclusion of Gabrielle as an "additional account holder."

Further, to the extent that the holding in *Farias* is based on evidence other than the language in the account agreements, we decline to follow that analysis in the context of this case. *See Jody James Farms*, 547 S.W.3d at 633; *Brumitt*, 519 S.W.3d at 102–03; *Stine*, 80 S.W.3d at 589. We are bound to follow the directive from the Texas Supreme Court to look "solely to the contract's language, construed as a whole." *See Brumitt*, 519 S.W.3d at 102; *see also Smith v. East*, 411 S.W.3d 519, 526–27 (Tex. App.—Austin 2013, pet. denied) ("We are thus bound to follow [precedent from Texas Supreme Court] unless and until the Texas Supreme Court instructs us otherwise.").

Bound by the Texas Supreme Court's directives and based on our review of the language in the account agreements, we conclude that the probate court did not err to the extent it

14

concluded that Bridgette, acting as next friend of Gabrielle, was not bound to arbitrate her claims against LFA on the theory of third party beneficiary.[6]

**Equitable Estoppel**

Independent of its argument under the theory of third party beneficiary, LFA argues that Bridgette and Gabrielle are estopped from avoiding the arbitration clauses in the account agreements because they effectively are seeking recovery under the account agreements. LFA is relying on direct benefits estoppel, which is a type of equitable estoppel. *Kellogg Brown & Root*, 166 S.W.3d at 739; *see Toll Dall. TX, LLC v. Dusing*, No. 03-18-00099-CV, 2019 Tex. App. LEXIS 3947, at \*12–15 (Tex. App.—Austin May 16, 2019, no pet.) (mem. op.) (discussing direct benefits estoppel). "Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Kellogg Brown & Root*, 166 S.W.3d at 739; *see id.* at 741 (concluding that "non-signatory should be compelled to arbitration a claim only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision"); *see also Rachal v. Reitz*, 403 S.W.3d 840, 847 (Tex. 2013) (noting that "it would be

---

[6] *Compare Morgan Stanley DW, Inc. v. Halliday*, 873 So. 2d 400, 402–05 (Fla. 4th Dist. Ct. App. 2004) (concluding that non-signatory trust beneficiary was not bound by customer account agreement containing arbitration clause that was entered into by trustee and Morgan Stanley)*, with In re Blumenkrantz*, 824 N.Y.S.2d 884, 888–89 (N.Y. Sur. Ct. 2006) (concluding that beneficiary and trustee were bound to arbitrate claims against financial institution pursuant to account agreement signed by trustee); *In re Shahan Irrevocable & Inter Vivos Tr.*, 932 P.2d 1345, 1348 (Ariz. App. 1996) ("Shahan, as trust beneficiary, was the intended third-party beneficiary of the customer agreement between the trust and Staley.").

incongruent to allow a beneficiary to hold a trustee to the terms of the trust but not hold the beneficiary to those same terms").

"If, however, a non-signatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled under this theory." *Kellogg Brown & Root*, 166 S.W.3d at 739–40; *see id.* at 741 (concluding that, under direct benefits estoppel, relationship between non-signatory's claims and contract containing arbitration provision "does not, in itself, bind the non-signatory to the arbitration provision" but that "non-signatory should be compelled to arbitrate a claim only it is seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision"); *see also G.T. Leach Builders, LLC v. Sapphire V.P., L.P*, 458 S.W.3d 502, 528 (Tex. 2015) ("'[W]hen the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' rather than from the contract, 'direct benefits' estoppel does not apply, even if the claim refers to or relates to the contract." (quoting *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009) (orig. proceeding))); *Weekley Homes*, 180 S.W.3d at 132.[7]

LFA argues that Bridgette and Gabrielle seek recovery under the account agreements and that, although Bridgette asserts a tort claim, it cannot be determined without reference to the account agreements because the agreements define the scope of LFA's duties to the Gabrielle Ards

---

[7] *See also Smith v. Multi-Financial Secs. Corp.*, 171 P.3d 1267, 1273–74 (Colo. App. 2007) (holding that trust beneficiaries were estopped from avoiding arbitration provisions in account agreements that trust had entered into with investment company because they sought to benefit from agreements); *In re Jean F. Gardner Amended Blind Tr.*, 70 P.3d 168, 170 (Wash. App. 2003) (concluding that non-signatory trust beneficiaries' claims for breach of fiduciary duty for imprudently investing and failing to diversify assets "directly concern or arise from the [investment account] agreement").

Trust. *See Global Fin. Servs., L.L.C. v. Estate of Brittingham-McLean*, Nos. 04-04-00854-CV & 04-05-00074-CV, 2007 Tex. App. LEXIS 4748, at *17 (Tex. App.—San Antonio June 20, 2007, no pet.) (mem. op.) (concluding that "both tort-based and contract-based" claims were subject to arbitration because they were based on relationship created by customer agreement that contained arbitration clause); *see also VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 832 (Tex. App.—Dallas 2013, no pet.) ("Generally, if the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract containing the arbitration provision, the claim is arbitrable." (citation omitted)).

"Under both Texas and federal law, whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleadings." *Weekley Homes*, 180 S.W.3d at 131–32. Based on our review of the substance of Bridgette's pleaded claims, we conclude that her common law and statutory claims against the trustees and LFA—alleging misconduct by Carl that materially depleted the value of the trust estate and seeking joint and several liability—do not assert rights or rely on the terms of the account agreements but are independent of those agreements. *See Jody James Farms*, 547 S.W.3d at 638 ("A fiduciary duty generally 'arises from the relationship of the parties and not from the contract.'" (citation omitted)); *Kellogg Brown & Root*, 166 S.W.3d at 740 ("[U]nder 'direct benefits estoppel,' a non-signatory plaintiff cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration provision, it would have no basis to sue."); *Goldberg*, 2018 Tex. App. LEXIS 1639, at *12 (concluding that non-signatory's claims "rooted in statutory and common law" did not arise from terms of agreement that contained arbitration clause); *In re Prudential Secs., Inc.*,

17

159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) ("Ordinarily, a non-signatory can only be bound by the terms of an arbitration provision if the non-signatory is asserting claims requiring reliance on the terms of the written agreement containing the arbitration provision."); *see also InterGen N.V. v. Grina*, 344 F.3d 134, 145–46 (1st Cir. 2003) ("Although federal courts generally 'have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed,' they have been hesitant to estop a nonsignatory seeking to avoid arbitration." (emphasis in original, internal citation omitted)). Further, LFA does not assert that Gabrielle has exercised other rights under the account agreements that would bind her to the arbitration clauses. *See Weekley Homes*, 180 S.W.3d at 134–35 (concluding non-signatory was compelled to arbitrate personal injury claim that was not based on contract because of "her prior exercise of other contractual rights and her equitable entitlement to other contractual benefits," explaining that "nonparty cannot both have his contract and defeat it too"); *Dusing*, 2019 Tex. App. LEXIS 3947, at *13–14 (holding that non-signatory homeowners were bound to arbitrate based on arbitration provision in home builder's warranty because homeowners had made claims under warranty and obtained repairs to house).

For these reasons, we conclude that the probate court did not err to the extent that it concluded that Bridgette, acting as next friend of Gabrielle, was not bound to arbitrate her claims against LFA based on the theory of equitable estoppel.

**Agency**

LFA also argues that Bridgette and Gabrielle are bound to arbitrate their claims under the theory of agency. *See Rubiola*, 334 S.W.3d at 224 (explaining that obligation to arbitrate in agreement may bind non-signatory under principles of agency); *see also The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 538 (5th Cir. 2008) ("Directly put, where an agent signs a contract requiring arbitration, the principal is bound by the arbitration requirement."). "Agency is 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Bridas*, 345 F.3d at 356–57 (quoting Restatement (Second) of Agency § 1(1)(1958)). "An agency relationship may be demonstrated by 'written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to the third party (apparent authority).'" *Id.* at 357 (quoting *Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989)); *see also Jody James Farms*, 547 S.W.3d at 635 (discussing theory of agency for compelling arbitration and concluding that arbitration could not be compelled on facts before court).

In this case, there was no evidence that Carl or Brenda had actual or apparent authority to act on behalf of Gabrielle such that they were acting in an agency capacity for her when they signed the account agreements. Under the trust decrees, the trustee's actions during the life of the trust were not subject to Gabrielle's control or direction. For example, it was within the trustee's "full and complete discretion" to determine distributions, and the trustee's powers generally included "complete discretion" as to investment decisions of trust assets and "as wide a latitude in the selection, retention, or making of investments as an individual would have in retaining or investing

19

his own funds." Although Carl and Brenda owed fiduciary duties as trustees, we conclude that they were not acting as Bridgette's or Gabrielle's agents when they signed the account agreements. *See Bridas*, 345 F.3d at 356–57; *see also SSP Partners*, 241 S.W.3d at 169 (concluding that there was no provision in agreement in which mother agreed to submit her minor children's claims to arbitration and that mother did not "sign the agreement on behalf of the children or as representative of the children").[8]

On these bases, we conclude that the probate court did not err to the extent that it concluded that Bridgette, acting as next friend of Gabrielle, was not bound to arbitrate her claims against LFA on the theory of agency.

**Derivative Nature of Claims**

Independent of the three theories discussed above, LFA argues that the derivative nature of Bridgette's claims bound her and Gabrielle to the arbitration clauses in the account agreements. LFA focuses on Bridgette's pleadings seeking to recover "in her derivative capacity on behalf of the trustee of Gabrielle Ards Trust." LFA argues that "[b]y virtue of these efforts to step into the shoes of Carl and Brenda, Bridgette and Gabrielle are bound by the arbitration provisions." As support for its argument, LFA cites *Labatt Food Service*, 279 S.W.3d at 643, and *Cedillo v. Immobiliere Jeuness Establissement*, 476 S.W.3d 557 (Tex. App.—Houston [14th Dist.] 2015,

---

[8] We also observe that Gabrielle is a minor, and a contract with a minor is voidable. *See PAK Foods Hous., LLC v. Garcia*, 433 S.W.3d 171, 176–77 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) (stating that law in Texas is that contract executed by minor is voidable by minor). In this context, it would be incongruent to bind Bridgette, acting as next friend of Gabrielle, to arbitrate her claims against LFA under an agency theory when Gabrielle could have voided the account agreements if she had actually signed them.

pet. denied). We find the claims that were asserted derivatively by the plaintiffs in those two cases not to be analogous to the claims asserted by Bridgette, acting as next friend of Gabrielle.

In *Labatt Food Service*, the Texas Supreme Court determined that the wrongful death beneficiaries, the children and parents of the decedent, were bound by the decedent's pre-death agreement to arbitrate claims with his employer "because of the derivative nature of their claims." 279 S.W.3d at 641. In reaching its conclusion, the court observed "that the right of statutory beneficiaries to maintain a wrongful death action is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death" and that "statutory wrongful death beneficiaries' claims place them in the exact 'legal shoes' of the decedent." *Id.* at 644. In contrast to claims brought by wrongful death beneficiaries that are dependent on a decedent's claims, Bridgette's claims do not arise from injury to the trustees but are based on her own injury, allegedly caused by the trustees and LFA. Unlike the plaintiffs in *Labatt Food Service* who were asserting statutory claims for wrongful death derived from the decedent's rights, Bridgette's claims—directed at alleged trustee misconduct with LFA's actual knowledge and participation—do not place her in the "exact 'legal shoes'" of the trustees and are not derivative of the trustees' rights under the account agreements. *See id.*; *see also* Tex. Prop. Code §§ 114.001 (addressing liability of trustee to beneficiary for breach of trust), .002 (addressing liability of successor trustee for breach of trust by predecessor), .008 (addressing remedies for breach of trust); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942) (stating that "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the fiduciary and is liable as such"); *Southwest Tex. Pathology Assocs., L.L.P. v. Roosth*, 27 S.W.3d 204, 208

21

(Tex. App.—San Antonio 2000, pet. dism'd w.o.j.) ("[A] third party who knowingly aids and assists in the breach of a fiduciary duty may also be liable.").

In *Cedillo*, the plaintiff company was a partner in partnerships and sued lawyers, asserting claims derivatively on behalf of the partnerships for legal malpractice based on the lawyers' representations of the partnerships. *See* 476 S.W.3d at 561. In this context, our sister court concluded that the company was bound to the arbitration clause in the written representation agreement between the lawyers and the partnerships. *See id.* at 567 (stating that court saw "no reason to depart from the well-established principle that a plaintiff suing derivatively on behalf of another party is bound to any relevant agreements to which that party agreed, including a valid arbitration agreement"). In contrast, as observed above, Bridgette has not asserted claims on behalf of Carl or Brenda against LFA for harm to the trustees; her claims are for harm to Gabrielle as the beneficiary of the trust against all three jointly and severally based on common law and statutory duties that are independent of the account agreements. *See* Tex. Prop. Code §§ 114.001, .002, .008; *Roosth*, 27 S.W.3d at 208; *see, e.g.*, *Ali v. Smith*, 554 S.W.3d 755, 762 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that fiduciary duty owed by executor or administer to estate is derived from statutes and common law); *cf. Global Fin. Servs.*, 2007 Tex. App. LEXIS 4748, at *15–16 (explaining that counsel for non-signatory conceded during oral argument that claims against licensed security broker "were derivative of the Estate's claims" pursuant to the customer agreement between estate and broker). She is suing on behalf of Gabrielle for damages to the trust estate as an individual beneficiary is authorized to do. *See* Tex. Prop. Code § 114.001(c); *see also id.*

§§ 111.004(7) (defining "interested person" to include beneficiary), 115.011 (stating that interested person may bring action).

Based on our review of Bridgette's pleaded claims, we conclude that the probate court did not err to the extent that it concluded that her claims that are asserted as "derivative" claims did not bind her to arbitrate those claims against LFA.

## Scope of Arbitration Clauses

Because we have concluded that LFA did not satisfy its burden to show that Bridgette, acting as next friend of Gabrielle, was bound to the arbitration clauses in the account agreements, we do not address LFA's arguments concerning whether her claims fall within the scope of those clauses. *See* Tex. R. App. P. 47.1, 47.4; *Jody James Farms*, 547 S.W.3d at 633 (stating that whether non-signatory was bound to arbitration agreement is gateway matter); *Kellogg Brown & Root*, 166 S.W.3d at 737 (stating that party seeking to compel arbitration under FAA has burden to show existence of a valid agreement to arbitrate and dispute within the scope of the agreement).

### Conclusion

For these reasons, we conclude that the probate court did not abuse its discretion by denying LFA's motion to compel arbitration and affirm the probate court's order.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   December 19, 2019